Argued December 1, affirmed December 14, 1915.

## HOEFLER *v.* MICKLE.[*]

(153 Pac. 417.)

**Food—Candy—Alcohol—"Adulterated."**

1. Where a manufacturer of chocolate candy containing 1.05 per cent alcohol sold it in packages whose label made no mention of the alcohol, but simply referred to the candy as "chocolates," such candy was an adulterated article of food within the meaning of Section 21, subdivision 16, of the Pure Food Law (Laws 1915, p. 565), defining the adulteration of candy, regardless of whether a food commissioner had theretofore established a standard of purity for candy as required by the act, since free alcohol is injurious and harmful to the health of partakers.

**Statute—Misbranding—Validity—Certainty.**

2. Pure Food Law (Laws 1915, p. 568), Section 35, subdivision 3, defining misbranded foods, is not indefinite and uncertain because

---

[*]On what constitutes adulteration within the food and drug act, see note in L. R. A. 1915B, 774.        REPORTER.

it cannot be determined whether it refers to food or drugs, since the language of such section, when read in connection with Section 20 (page 564), is broad enough to cover both food and drugs.

**Food—Pure Food Law—Construction.**

3.  The Pure Food Law (Laws 1915, p. 558) is remedial in its nature, and should be liberally construed.

**Food—Pure Food Law—Candy—Alcohol—"Misbranded."**

4.  Chocolate candy, containing 1.05 per cent alcohol, but sold in packages whose label refers to the candy simply as "chocolate," without mentioning the alcohol contained, was "misbranded" within the meaning of Pure Food Law (Laws 1915, p. 567), Section 35, since alcohol is a deleterious substance.

> [As to liability of manufacturer of unwholesome food to person injured by partaking of it, see note in 111 Am. St. Rep. 713.]

From Multnomah: HENRY E. McGINN, Judge.

In Banc.    Statement by MR. JUSTICE BURNETT.

This is a suit by H. R. Hoefler, doing business under the firm name and style "Hoefler's," against J. D. Mickle, as the duly elected, qualified and acting food and dairy commissioner of the State of Oregon, to prevent the latter from seizing and confiscating some candy manufactured by the plaintiff and styled "Centennial Chocolates." Issues were formed, and the following stipulation of facts was made and filed:

"That at and during all the several times hereinafter mentioned, plaintiff was, and now is, engaged in the City of Astoria, Clatsop County, Oregon, in the business of manufacture and sale of candy, bonbons, ice-cream, and other confectioneries under the firm name and style of 'Hoefler's.' That at and during all the several times hereinafter mentioned, defendant was and now is the duly elected, qualified and acting food and dairy commissioner of the State of Oregon, with offices at 510 Worcester Building, Portland, Multnomah County, Oregon. That for more than five years past plaintiff in the prosecution of his said business, has been and now is manufacturing and selling a certain kind or brand of candy known as 'Hoefler's Centennial Chocolates,' which candy was not, at the

time hereinafter specified, nor at the commencement
of this suit, adulterated within the provisions of the
laws of the State of Oregon, but does and at said
times did contain rum, brandy and alcohol in such pro-
portion that the alcohol constituted and does constitute
not in excess of 1 5/100 per cent by volume of such
candy, and the packages in which said candy is sold
did not bear a statement on the label of the quantity
or proportion of rum, brandy and alcohol contained
therein, nor any label or brand showing that any rum,
brandy or alcohol is contained in said candy, and that
the sample of the candy box wrapper attached to plain-
tiff's complaint is a true and correct wrapper of the
boxes in which said candy was and is now being sold.
That plaintiff has been during said period of five
years, and still is, conducting a profitable business in
the manufacture and sale by wholesale and retail of
said candies in the State of Oregon, and that said busi-
ness is the principal business and source of income
of the plaintiff. That on or about the 6th of May,
1915, the defendant, in his capacity as dairy and food
commissioner of the State of Oregon, caused a chemi-
cal analysis of a sample of said candy to be made,
which sample was of uniform quality of all such can-
dies manufactured and sold by the plaintiff, and as-
certained therefrom that said candy, contained not in
excess of 1 5/100 per cent by volume of alcohol, and
thereupon notified plaintiff to desist from the manu-
facture of such candy containing said, or any, per
cent of alcohol, and that defendant would, after the
taking effect of Chapter 343 of the General Laws of
Oregon of 1915, seize said candy and take action
against the plaintiff for violation of said act. That on
the twenty-eighth day of May, 1915, defendant seized
certain of said Centennial Chocolates manufactured
by the plaintiff, and then in the possession of and of-
fered for sale by the Railway Exchange Cigar Store,
located in the Railway Exchange Building, between
Third and Fourth Streets, on the south side of Stark
Street in the City of Portland, Multnomah County,

Oregon, and immediately notified in writing the person from whose possession said candy was taken of the seizure thereof, a copy of which notice is attached to the answer in the above-entitled cause and made a part thereof. That unless restrained by the court, the defendant will continue the seizure of said candy manufactured by the plaintiff, wherever found in the State of Oregon for sale, or offered for sale, and by whomsoever kept or offered for sale, containing said amount of alcohol, rum or brandy, or any thereof, without being labeled or branded in such manner as to show the amount of brandy, rum, and alcohol, and either thereof, as provided by Sections 34 and 35 of Chapter 343 of the General Laws of Oregon of 1915, and will institute proceedings for the prosecution of plaintiff under the provisions of said chapter."

The Circuit Court dismissed the suit, and the plaintiff appeals.          AFFIRMED.

For appellant there was a brief over the name of *Messrs. Norblad & Hesse,* with an oral argument by *Mr. Frank C. Hesse.*

For respondent there was a brief over the names of *Mr. Isaac H. Van Winkle,* Assistant Attorney General, and *Mr. George M. Brown,* Attorney General, with an oral argument by *Mr. Van Winkle.*

MR. JUSTICE BURNETT delivered the opinion of the court.

This litigation arises under the pure food law of February 26, 1915. According to the prevalent fashion of Oregon legislation involving boards and commissions, the act first provides for salaried commissioner and deputies, chemists and agents. This important purpose of the enactment having been accomplished, it takes up the subject of food, defining it thus in Section 20:

"The term 'food' as used herein, shall include all articles used for food or drink, or intended to be eaten or drank by man, whether simple, mixed or compound."

The preceding section declares that:

"No person shall within this state manufacture for sale, have in his possession with the intent to sell, offer or expose for sale, or sell, any article of food which is adulterated within the meaning of this act."

It is said in Section 21:

"An article shall be deemed to be adulterated within the meaning of this act: (1) If any substance has been mixed with it so as to lower or depreciate, or injuriously affect its quality, strength or purity. * * (7) If it contains any added substance or ingredient which is poisonous or injurious to health. * * (16) Candy containing terra alba, barytes, talc, chrome yellow, or any other mineral substances, poisonous color, or flavor or other ingredient injurious or detrimental to the health of consumers": Laws 1915, p. 564.

It is also made unlawful for any person, firm or corporation to manufacture, sell or offer or expose, or have in possession with intent to sell within this state, any article of food which is misbranded within the meaning of the act. Section 35 says:

"The term 'misbranded,' as used herein, shall apply to all articles of food or articles which enter into the composition of food, the package or label of which bears any statement, design, or devise regarding such article, or the ingredients or substance contained therein which shall be false or misleading in any particular and to any food product which is falsely branded as to the state, territory, county or country in which it is manufactured or produced. That, for the purpose of this act, an article shall be deemed to be misbranded: (1) In case of drugs: If its package or

label shall bear or contain any statement, design or device regarding the curative or therapeutic effect of such article or any of the ingredients or substances contained therein, which is false and fraudulent. (2) If it be an imitation, or offered for sale under a distinctive name of another article. (3) If it be labeled, branded, or placarded so as to deceive or mislead the purchaser, or purport to be foreign product when not so, or if the contents of the package as originally put up shall have been removed in whole or in part, and other contents shall have been placed in such package, or if it fail to bear a statement on the label of the quantity or proportion of any alcohol, morphine,. opium, cocaine, heroin, formaldehyde, saccharine, salicylic acid, boric acid, alpha or beta eucaine, cannabis indica, chloral hydrate, acetanilide or any derivative or preparation of any such substances, or any other poisonous acid or substance. * * (5) If the package or its label shall bear any statement, design or device regarding the ingredients or substance contained therein, which statement, design or device be false or misleading in any particular; provided, that an article of food which does not contain any added poisons or deleterious substance shall not be deemed to be adulterated or misbranded in the following cases: (1) In case of mixtures or compounds which may be now or from time to time known as articles of food, under their own distinctive name, and not an imitation of or offered for sale under a distinctive name of another article, if the name be accompanied on the same label or brand with a statement of the name and address of the manufacturer and the place where said * * articles labeled, branded or tagged so * * blends, and the word 'compound,' 'imitation,' or 'blend' as the case may be, is plainly stated on the package in which it is offered for sale * * ": Laws 1915, p. 567.

In the earlier sections of the act the commissioner is required to make uniform rules and regulations for the purpose of carrying out and enforcing the provisions of the act and cause them to be published in the

quarterly bulletin established by the statute. It is further enjoined that from time to time the officer shall adopt and establish standards of quality, purity and strength of articles of food, liquor and drinks, for which no standards are prescribed by law, and such standards so adopted and established shall in no case be higher than those provided by the United States Department of Agriculture; and the same are also to be published: Sections 13 and 14. The label alluded to in the pleadings and stipulation has on it the words, "Hoefler's Centennial Chocolates, Astoria, Oregon," and a device, resembling a seal, inscribed, "Hoefler's Registered 1811—1911, Astoria, Oregon, Home of the Centennial Chocolates."

1. The questions to be determined are whether the defendant has in possession with intent to sell or distribute an adulterated article of food or one which is misbranded. The object of the act is to promote purity of food products and to protect the public against deception in such articles. To this end the law has denounced adulterations and deceptive labels. In such cases as the one in hand, for instance, a parent buying candy for his children has a right to know whether it is indeed pure confectionery or a mixture of sugar and whisky or other intoxicating liquor. Chocolate, a product of cacao seeds roasted and ground and often mixed with sugar, is a harmless article of food and, if true to the label admitted in this suit, would not be harmful to anyone. On the other hand, if it contains an ingredient "injurious or detrimental to health of consumers," as mentioned in subdivision 16 of Section 21 of the act, or, as stated in subdivision 5 of Section 35 on misbranding, if it contains "any deleterious substance," it is misbranded within the meaning of the act. Alcohol is classified by

all toxicologists as a poison. Considered in the light of legislation from the foundation of the state to the present, it is a substance deleterious to health. It has always been under the ban of the law as an enemy to the physical welfare of the people. Without reference to whether or not a food commissioner has established a standard of purity for the article of food called "candy," the fact that the confection in question contains 1 5/100 per cent of alcohol is sufficient to bring it within the sixteenth subdivision of Section 21, defining an adulterated article of food, for the simple reason that free alcohol is injurious and harmful to the health of anyone who partakes of it.

2. It was strongly pressed upon us at the hearing that Section 35 on the subject of misbranding is indefinite and uncertain, and particularly that it is impossible to determine whether the third subdivision relates to drugs or to food. By its own terms the section is made to apply to all articles of food. Referring to the earlier Section 20, we find the term includes all articles used for food or drink, or intended to be eaten or drank by man, whether simple, mixed or compound. This definition is wide enough to include within its terms drugs which are intended to be taken inwardly by individuals. In the statutory sense, therefore, such drugs are food, and for the purposes of Section 35, construed with Section 20, it matters not whether subdivision 3 be applied to the bread of the baker, the candy of the confectioner, or the drugs of the doctor.

3. The label "Centennial Chocolates" is innocent enough on its face, and indicates ordinary chocolate candy. In this case it is a misbrand within the meaning of the statute, because it does not state the proportion of alcohol contained in the product it incloses.

The statute is remedial in its nature, and should be construed to effectuate the purpose intended.

4. The stipulation of facts measured by this enactment discloses that the article in question was not only adulterated, but also misbranded, rendering the plaintiff amenable to the law and the activities of the commissioner as described in the pleadings. The decision of the Circuit Court was right, and is affirmed.

AFFIRMED.

MR. JUSTICE EAKIN did not sit.