# DAHNKEN v. GEORGE ROMNEY & SONS CO. et al.

No. 7006.   Decided August 29, 1947.   (184 P. 2d 211.)

472

See 29 C. J. S. Easements, Sec. 58. Rights arising from reciprocal use by adjoining owners of strip along boundary for purpose of passageway or other purpose for benefit of both lots, see note 98 A. L. R. 1098. See, also, 17 Am. Jur. 969.

*George A. Critchlow* and *A. W. Watson,* both of Salt Lake City, for appellant.

*Gaylen S. Young* and *Senior & Senior,* all of Salt Lake City, for respondents.

WOLFE, Justice.

Appeal by the plaintiff from a judgment which quieted plaintiff's title to a strip of land subject to an easement of egress and ingress appurtenant to the defendants' properties.

In this action the plaintiff sued to quiet title to a strip of land at the east and rear of his property located at 23 and 25 West 2nd South Street, Salt Lake City. The judgment of the trial court quieted his title subject to easements over a portion of said property appurtenant to the property belonging to the defendant, George Romney & Sons (hereinafter called Romney), and an easement over a smaller portion of said property appurtenant to the property belonging to defendant, Thompson & Murdock Investment Company (hereinafter called Investment Company).

In paragraph (1) of his complaint the plaintiff alleged ownership and prayed for his title to be quited to the following land:

"Beginning at a point on the East wall of the building known as numbers 23 to 25 West 2nd South Street, * * * which is 70 feet southerly from the Northeast corner of said building and running thence East 9.68 feet; thence South 87½ feet more or less to a point which is 157.5 feet South of the North line of Lot 7, Block 58, 'A' Salt Lake City Survey; thence West 55 feet; thence North 9.59 feet more or less to the Southwest corner of a one story brick building adjoining the building first above referred to at the rear; thence Easterly along the South wall of said building 20.62 feet to the Southeast corner thereof; thence Northerly along the East wall of said building 8.97 feet more or less to its junction with the South wall of a one story brick building adjoining it on the East; thence Easterly along the South wall of said last described building 24.7 feet more or less to the Southeast corner thereof; thence Northerly along the East wall of said building and continuing along the East wall of the building first above referred to 69 feet more or less to the point of beginning, said land being a part of the lands described in and conveyed to the plaintiff by deed of Otis B. Kirk and wife, grantors, dated August 5, 1941, and recorded August 5, 1941 in the office of the County Recorder of Salt Lake County, Utah, in Book 281 at page 3 thereof and therein described as situated in Lot 7, Block 58, Plat 'A,' Salt Lake City Survey."

The trial court adjudged the plaintiff to be the owner of the above described land (subject to easements over a part thereof as hereinafter discussed) except that it set the east line thereof as "the east line of Lot 7, Block 58, Plat 'A', Salt Lake City Survey" whereas the first part of the description in the plaintiff's complaint describes the east line as a line running north and south 9.68 feet east of a point on plaintiff's building which is located on Lot 7.

The first question in this appeal is raised by the plaintiff's contention that the trial court erred in determining the east line of plaintiff's property to be the "east line of Lot 7" instead of describing said east line in reference to the plaintiff's buildings on his property.

According to counsel it is vital that title to these properties be established in reference to the buildings existing thereon instead of by metes and bounds in reference to the surveys because two surveys of Salt Lake City were made. In the original survey which was made shortly after the city was settled some one hundred years ago it was intended that the city blocks would be forty rods square. Lots within the blocks were laid out on that assumption and buildings were constructed by the owners of these lots in reference to the lines established by that survey. However, in 1890 a resurvey of the city was made and Block 58, the city block here involved, was found to be forty rods and six inches in its east-west dimension. According to plaintiff's counsel, it was to avoid any uncertainty concerning the precise location of the boundary of plaintiff's property which might exist because of the discrepancy between the two surveys that the land was described in the complaint by reference to buildings instead of by reference to lots and blocks of the city survey. But while plaintiff in his complaint described his land with reference to buildings, he also described it as:

"a part of the lands described and conveyed to the plaintiff by the deed of Otis B. Kirk and wife, grantors, dated August 5, 1941 and recorded Aubust 5, 1941 in the office of the County Recorder of Salt

Lake County, Utah, in Book 281 at page 3 thereof and therein described as situated on Lot 7, Block 58, Plat 'A', Salt Lake City Survey."

The reasonable interpretation of the description of the land in plaintiff's complaint is that the land is contiguous to plaintiff's buildings and extends the specified distances therefrom *but* that all said land is located in Lot 7, Block 58, Plat "A," Salt Lake City Survey and is a part of the land conveyed to the plaintiff by Kirk.

But even if we assume that the plaintiff did plead ownership of the land in reference to his buildings and that said land is not limited by the pleadings to land in Lot 7 the plaintiff did not prove ownership to any land except land situated in Lot 7. None of the property here involved is occupied by plaintiff's buildings. The only evidence of his title was in an abstract of title introduced in evidence by him. Entry number 43 of that abstract refers to the above mentioned Kirk deed. It describes the land conveyed as follows:

"Commencing at a point 7.53 feet West of the Northeast corner of Lot 7, Block 58, Plat 'A', Salt Lake City Survey, and running thence Southerly 70 feet *to a point which is 7.8 feet West of the East boundary line of said Lot 7; thence East 7.8 feet to said east boundary line;* thence South 95 feet; thence West 55 feet; thence North 165 feet; thence East 47.47 feet, to the point of beginning." (Italics added.)

It thus appears that the east boundary of the land conveyed to the plaintiff by the Kirk deed was the east line of Lot 7, Block 58, Plat "A," Salt Lake City Survey. There is no evidence from which the court could have found the precise distance between plaintiff's building and the east line of said Lot 7, according to either survey.

Plaintiff argues that his description in reference to his buildings in the above quoted part of his complaint was admitted by the defendants and that the judgment should have set the same boundaries. The admission is sought to be obtained from the following part of the defendant Romney's answer:

"1.   Admits that the plaintiff is now and for more than two years last past has been the owner of that certain lot, piece, or parcel of land as it may be situated in Lot 7, Block 58, Plat 'A', Salt Lake City Survey, * * * and particularly referred to in Paragraph numbered (1) in plaintiff's complaint herein * * *."

Defendant Investment Company's answer in this regard is the same as Romney except that the words "as it may be" are not found therein.

The defendants' admissions of plaintiff's ownership are limited to land "situated in Lot 7."

The only reasonable interpretation of the pleadings and the evidence is that all the land involved in this suit was located in Lot 7, Block 58, Plat 'A,' Salt Lake City Survey. As there is no pleading or proof that the plaintiff owns land east of the east line of Lot 7 and there is ▮ no admission of his ownership of any land outside Lot 7, it could not be error prejudicial to the plaintiff for the trial court to adjudge the east line of Lot 7 as the east line of the plaintiff's property. There was no evidence from which the trial court could have set the east line of plaintiff's property other than the east line of Lot 7.

The easements (as herein discussed) found to belong to the defendants over a portion of the property title to which was quieted in plaintiff are across land east of plaintiff's buildings and not over land occupied by those buildings because the judgment expressly makes the east lines of said buildings the west lines of the land subjected to the easements.

The second question is: Did the trial court err in finding and adjudging that the defendants have right of way easements appurtenant to their respective properties over plaintiff's land?

The sketch hereunder is labeled so as to show the relative position of the property belonging to the parties. Cross hatched areas marked "A" and "B" represent the land over which the easements were given. Defendant Romney was

given an easement over both segments "A" and "B" and defendant Investment Company was given an easement only over segment "B".

2ND SOUTH ST.

Segment "A" is between the Romney building occupied by Arthur Frank's store and the plaintiff's building. It is part of an alley which is "blind" on the north because a building entirely blocks it preventing access to 2nd South, the street beyond.

The defendants' claims to easements are based on prescription. According to the undisputed evidence, for at least as long ago as 1897 and until 1940 a building known as Hamilton warehouse occupied the area marked "C" on the sketch. The shaded line at the west and south of area "C"

represents the rock foundation of that warehouse. That foundation is still there but is no nearly level with the ground that vehicles can now pass over it. While that warehouse stood on area "C" the only means of access to the rear of the defendants' properties was over segment "B." Some 14 witnesses testified that for over 43 years before this trial both segments "A" and "B" had been used in connection with the area west of the defendant's buildings as a right of way to the rear of those buildings. Prior to 1941 the Arthur Frank store existed as shown by "old section" on the sketch. Also the "recent addition" to the Walk Over Store was built after 1941. So prior to 1941 vehicles making deliveries and pickups at the rear of the Romney property had the entire area now occupied by the 1941 Arthur Frank addition, the "recent addition" to Walk Over's and segments "A" and "B" in which to turn around, park while loading or unloading and as space for travel. Vehicles making deliveries or pickups at the Investment Company's property used as much as was needed of the same areas as were used in making deliveries to the Romney property in addition to the area west of the Investment Company's buildings.

According to the witnesses the areas were used many times each day all during the period of 1897 to 1940. They were used to haul in merchandise of all kinds and to take out trash. They were used by both defendants' lessees and their employees. The entire segment "B" was used by vehicles turning around and going to and from the property belonging to the Investment Company even though the north portion of that segment is not directly west of said property. Never until shortly before this suit was there any objection by word, sign or deed by any of the plaintiff's predecessors to the above mentioned uses of the land by the defendants.

We held in *Zollinger* v. *Frank*, 110 Utah 514, 175 P. 2d 714, 716, that,

"where a claimant [to an easement] has shown an open and continuous [and uninterrupted] use of the land for the prescriptive period (20

years in Utah) the use will be presumed to have been against the owner and the owner of the servient estate to prevent the prescriptive easement from arising has the burden of showing that the use was *under* him instead of *against* him."

There is no evidence in the record tending to rebut the presumption of adverse use by the occupants of the defendants' premises. It was, therefore, not error for the lower court to adjudge the defendant Romney to be ■ owner of an easement over segments "A" and "B" and defendant Investment Company the owner of an easement over segment "B", said easements appurtenant to the defendants' lands.

The plaintiff contends that if Romney ever had an easement over segment "A" it was abandoned by the construction of the Arthur Frank 1941 addition which has no door opening on that area as a result of which it is now impossible to use that area as a right of way to the Romney property.

It is a well recognized principle that an easement may be abandoned by the owner thereof. *Brown* v. *Oregon Short Line R. Co.*, 36 Utah 257, 102 P. 740, 24 L. R. A., N. S., 86; 17 Am. Jur. 1027, Easements 142. Under the circumstances of this case Romney's construction or approval of the construction of the Arthur Frank 1941 addition which has no door in the west wall opening on segment "A" is strong evidence of abandonment of segment "A" as an easement appurtenant to the Romney property. However, there are in this case no equitable issues; therefore, it must be considered as an action at law. *Babcock* v. *Dangerfield,* 98 Utah 10, 94 P. 2d 862.; *Norback* v. *Board of Directors,* 84 Utah 506, 37 P. 2d 339. Our review in law cases is limited to the determination of whether or not there is competent evidence to support the judgment of the trial court. The trial judge decided there was no abandonment by Romney or he would not have awarded Romney an easement over segment "A". The only evidence of abandonment is the construction of the 1941 Arthur Frank addition. On the other hand, sketches similar to the one in this opinion

showing the features including the door in the south of the Frank addition were introduced in evidence by both the plaintiff and the defendants. It is apparent from an examination of these sketches that even after the construction of the 1941 addition to the Arthur Frank store segment "A" could be used and might be valuable to Romney as a parking area for vehicles making deliveries or pickups at the Romney property. Segment "A" can also be used for part of turning area for those vehicles. It follows that there is competent evidence to support the trial judge's determination that the construction by Romney or with its approval of the 1941 Arthur Frank addition with the door in the south side was not an abandonment by Romney of its easement over segment "A." It was therefore not error for the trial court not to find an abandonment of that right.

As to segment "B" the plaintiff contends that even if the defendants acquired the right to use this part of his property that said right terminated in 1940 when the warehouse on area "C" was removed so as to allow vehicles to go across area "C" to the defendants' properties. This argument obviously has no merit as to Romney's easement over segment "B" because the record does not show that Romney has any right as against its co-defendant to cross area "C." Therefore, as to Romney, the removal of the warehouse is not shown to have made available another access as a matter of right to its property.

But assuming Romney has the right to cross area "C," both defendants by their adverse use of segment "B" for the prescriptive period acquired *prescriptive* easements therein not mere ways of necessity which might terminate when the necessity no longer existed. That another route for travel became available to the dominant owners does not of itself destroy or amount to an abandonmeit of their *prescriptive* easements. The trial court did not err in not finding an abandonment by either defendant of its easement over segment "B."

The judgment of the lower court is affirmed. Costs to respondents.

McDONOUGH, C. J., and PRATT, WADE, and LATIMER, JJ., concur.