337 P.2d 424

Henri NIEMANN, Maria Niemann, Renate Niemann, by her guardian ad litem, Henri Niemann, and Henri Niemann, Jr., by his guardian ad litem, Henri Niemann, Plaintiffs and Respondents,

v.

GRAND CENTRAL MARKET, INC., a corporation, Defendant and Appellant.

No. 8670.

Supreme Court of Utah.

April 3, 1959.

2. See my dissenting opinion in Valley Mortuary v. Fairbanks, 1950, 119 Utah 204, 233, 225 P.2d 739, 754.

Ray, Quinney & Nebeker, Grant C. Aadnesen, Salt Lake City, for appellant.

Rawlings, Wallace, Roberts & Black, Cannon & Duffin, Salt Lake City, for respondents.

McDONOUGH, Justice.

Plaintiffs brought this action to recover damages for illness resulting from trichinosis allegedly contracted from meat sold by the defendant. From a judgment in favor of plaintiffs, entered upon a verdict of the jury, defendant appeals.

The record evidences that on the 24th of June, 1955, Mr. and Mrs. Niemann purchased ground beef and other groceries at defendant's place of business. This ground beef was later seasoned, mixed with raw egg and eaten, uncooked, by plaintiffs. Some ten days later, on July 4th, Mr. and Mrs. Niemann fell ill; by July 14th all the plaintiffs were afflicted. The severity of their illness ranged from the most serious case, Mrs. Niemann, who spent two weeks in a hospital, to Renate Niemann who was only confined to her bed for a few days. Each plaintiff suffered a degree of infection directly proportional to the amount of ground beef he had eaten. Two members of the household who failed to eat any of the meat remained unaffected. There is no dispute that plaintiffs were afflicted with trichinosis.

The trichinae larvae which cause this disease are found only in raw pork, among the foods commonly eaten by man. These trichinae can be destroyed by freezing, curing, or cooking the pork. Normally the disease manifests itself in humans within a period of two days to four weeks after ingestion of the trichinae.

Plaintiff introduced evidence that defendant's meat department ground both beef and pork with the same grinder, and that beef was often ground after pork sausage had been processed. Defendant's employees testified that this grinder was dismantled and cleaned with hot pressured water between each use with a different type of meat; that the temperature of the water used was sufficiently high to kill trichinae larvae. It was plaintiffs' contention below that defendant failed to properly clean the grinder after pork had been ground, allowing particles to remain and become mixed with subsequently ground beef. It is this mixture which plaintiffs claim defendant sold to them and which caused their illness. Plaintiffs testified they had eaten no other uncooked meats during the period within which the infection must have taken place.

There was testimony elicited from defendant's witness, a qualified physician, to the effect that one ounce of pork could contain as many as 100,000 trichinae larvae, and that 200 such larvae would be sufficient to produce an infection as severe as was Mrs. Niemann's.

The case was submitted to the jury with the instruction that sale of ground beef containing pork which is infested with trichinae larvae is a violation of the Utah statutes prohibiting the sale of adulterated foods, and that such violation creates liability on the part of the seller, with no regard to the degree of care employed nor to whether the seller had knowledge of the adulteration.

Upon return of the verdict, defendant moved for a new trial or in the alternative to set aside the verdicts and enter judgment in accordance with defendant's prior motion for a directed verdict. These motions were denied by the court.

On appeal defendant alleges, first that there was insufficient evidence to support the verdict, and second that the trial court erred by instructing the jury that liability could be determined on the grounds of statutory violation alone and by refusing to instruct on the law of warranties.

Neither argument of defendant is persuasive. It is well settled in the law that sufficiency of the evidence to support a jury verdict, in a law action, must be viewed in the light most favorable to the prevailing party.[1] It is equally clear that

1. Jensen v. Logan City, 96 Utah 53, 83 P.2d 311, reaffirmed 96 Utah 522, 88 P.2d 459.

the examination of an appellate court is limited to the question of whether there is substantial evidence upon which the jury could have based its verdict.[2] In our judicial system the jury is the trier of fact, their determination of fact, based on face to face contact with each witness and on a first-hand appraisal of the evidence, must be given full consideration. The finding of a jury will be upset only when it is clearly not supported by substantial evidence.[3] With this in mind we find the evidence produced at trial reveals: a) that trichinae are found only in raw pork among man's foods; b) that the ground beef purchased from defendant was the only raw meat eaten by plaintiffs during the critical time; c) that defendant used the same grinder for both beef and pork, the former sometimes being ground after the preparation of sausage; d) that one ounce of pork could contain 100,000 trichinae larvae, 500 times the amount necessary to produce plaintiffs' most severe case; e) that the severity of each plaintiff's illness was directly proportional to the amount of ground beef eaten by them; f) and that those who ate none of the ground beef did not become ill.

It is evident therefore that the jury had sufficient evidence upon which to base their finding that defendant sold to plaintiffs ground beef which contained trichinae infested pork, and that this meat caused the damage complained of. Under these circumstances the verdict of the jury cannot be disturbed.

■ Defendant's second point alleges the trial court to have erred in giving the following instruction to the jury.

"The law imposes upon a person or corporation that sells food for human consumption a duty to see to it that it is not adulterated. Under the law food is adulterated if it contains any added poisonous or other deleterious ingredients which may render such article injurious to health. If ground beef contains sausage with trichinae it is an adulterated food and the selling of it constitutes a violation of the Utah Statutes. It makes no difference how careful such person or corporation is, even though it uses the utmost care to prevent adulteration of food nevertheless if a person or corporation sells adulterated food it is liable for any damages proximately resulting therefrom. It is not necessary that defendant have knowledge the food was adulterated in order for plaintiff to recover."

The defendant further alleges error in the court's refusal to give an instruction on

2. Horsley v. Robinson, 112 Utah 227, 186 P.2d 592; Dahnken v. George Romney & Son, 111 Utah 471, 184 P.2d 211.

3. Ibid.

the application of the law of warranty. An examination of the statutes involved reveals the instructions of the court below to have been correct. There can be no question that trichinae infested ground beef is an adulterated food within the meaning of the Utah statute, and under the proper reading of that statute liability is absolute for damage caused by the sale of such food. Under such interpretation the question of warranty has no application to the issue of liability. The Utah Code Annotated 1953, provides:

4-20-5, "Every person who manufactures for sale, sells, exchanges or delivers, or offers to sell, exchange or deliver, or has in his possession with intent to sell, exchange or deliver, any adulterated or misbranded drug, or article of food, drink or confectionery, or who adulterates or misbrands any article of food, drink, drug or confectionery, is guilty of a misdemeanor."

4-20-8, "For the purpose of this chapter an article shall be deemed to be adulterated: * * * In the case of foods: * * * (5) If it contains any added poisonous or other added deleterious ingredients which may render such article injurious to health. * * * (7) If it consists in whole or in part of a filthy, decomposed or pu-

trid animal or vegetable substance or any portion of any animal unfit for food (whether manufactured or not), or if it is a product of a diseased animal or one that has died otherwise than by slaughter."

This Utah statute is representative of legislative pronouncements enacted to protect the public health by the imposition of legal sanctions upon those who purvey, for public consumption, adulterated food. To fully implement this intent these statutes are construed so as to best effectuate their purpose.[4] Prior interpretations of this type statute have stated that civil liability is based on the same elements as criminal liability and may be based simply upon proof of violation of such a statute and violation may result even though there be no knowledge of the food's harmful propensities on the part of those responsible for its sale.[5]

The purpose of the statute in question is clearly the protection of the public health and safety. The accomplishment of that purpose is of prime importance and must be vigorously championed. The high degree of danger and serious consequences latent in the distribution of food to the public require the imposition of the duty amounting to the creation of the strictest liability. Those who undertake such dis-

4. Hoefler v. Mickle, 78 Or. 399, 153 P. 417.

5. People v. Schwartz, 28 Cal.App.Supp.2d 775, 70 P.2d 1017; 2 C.J.S. Adulteration § 10, p. 468; 152 A.L.R. 793.

tribution must be responsible for all damage proximately caused by the adulteration of their products.

In light of the foregoing and as applied to the facts of this case, the construction of the statute embodied in the criticized instruction is correct. Evidence was received in the court below of the care taken to avoid the mixing of ground pork with ground beef in the preparation of hamburger. This was admissible to show that there was no such mixing. But if there was in fact such a mixing, then under the statute the defendant is liable. The purpose and effect of the instruction was to point out to the jury this fact and to make it clear that the evidence of great care in the preparation of these products was admissible only to show that the food was in fact not adulterated, and that it should not be considered by the jury so as to exonerate the defendant from liability on the ground of due care. There may be cases where the seller of an adulterated product has no more knowledge or means of knowledge of the adulteration than the buyer. In such cases this instruction may not be applicable.

The judgment is affirmed. Costs to respondent.

WADE and WORTHEN, JJ., concur.

CROCKETT, C. J., concurs in the result.

HENRIOD, J., does not participate.