454 P.2d 886

**FIRST SECURITY BANK OF UTAH, NATIONAL ASSOCIATION, Plaintiff and Respondent,**

**v.**

**EZRA C. LUNDAHL, INC., E. Cordell Lundahl et al., Defendants and Appellant.**

**No. 11359.**

Supreme Court of Utah.

May 20, 1969.

Walter G. Mann, Reed W. Hadfield, Richard F. Gordon, Brigham City, for appellant.

Chas. P. Olson, of Olson & Hoggan, Logan, Don B. Allen, Salt Lake City, for respondent.

CROCKETT, Chief Justice.

In this suit plaintiff First Security Bank contests with the defendants, the Lundahls, as to who bears the loss on an $8100 check

which the Lundahls had deposited with the plaintiff bank. The plaintiff sent the check for collection, but it was never paid. The Lundahls asserted two defenses: (1) that because the bank negligently failed to give notice as required by the commercial code, it lost the right to charge it back to defendants' account, and (2) that there was an accord and satisfaction with respect to it.

When the check was dishonored by the payor bank, First Security Bank charged back the check against the defendants' account, obtaining the $893.93 in the account at the time and creating an "overdraft" of $7206.07. Although a jury answered interrogatories favorable to defendants on the issues of failure to give notice and accord and satisfaction, the trial court, on the basis of "further findings," rendered judgment for the plaintiff for $7206.07. Defendants were awarded $893.93 as an offset on their counterclaim. Defendants appeal.

Wherever there is dispute, it is our duty on review to accept as fact that evidence and the reasonable inferences to be drawn therefrom which supports the jury verdict.[1]

In July, 1966, the corporate defendant, a manufacturer of farm machinery in Logan, Utah, sold several pieces of equipment to Heathfield Equipment, Ltd., of Kamloops, British Columbia. One of the checks received by defendants as payment for the equipment was for $8121.88. This check was deposited in the plaintiff bank on July 28, 1966. It was sent to the Royal Bank of Canada for payment, but it was there dishonored. The check was returned to Logan and the plaintiff bank charged back the amount of the check to the defendants' account. At about this time, however, and for reasons not important here, the check was lost and the Lundahls were required to obtain a second check from Heathfield to replace it.

The second check was received on November 15, 1966, and was deposited with plaintiff bank to Lundahls' account on December 5, 1966. By a letter dated December 9, 1966, the Canadian bank gave notice to First Security of insufficient funds to pay the check, but that it would be held for payment unless otherwise instructed. However, according to the jury's finding, First Security did not then give notice of dishonor to the defendants.

Meanwhile, the Lundahls had been negotiating with a Hesston Corporation to sell their business and had entered into a contract to do so on July 29, 1966. The provisions of interest here are that by December 1, 1966, Hesston would deposit with the plaintiff, in escrow, $187,000 to be held for certain specified dispositions for the benefit of the Lundahls, including the payment of their debts, and that by January 1, 1967,

1. Niemann v. Grand Central Market, Inc., 9 Utah 2d 46, 337 P.2d 424 (1959).

Lundahls were to "fully pay, satisfy or obtain release of all debts, wages, accounts, taxes, liabilities" owed by or outstanding against them. It is pertinent to note that plaintiff First Security Bank had a copy of this since it was acting as the escrow agent.

On January 4, 1967, the Lundahls met with representatives of Hesston and plaintiff bank to complete the transaction. At this meeting, defendants were in possession of a letter from the plaintiff bank setting out all their direct obligations, a total of $75,648.73, and another letter setting out their contingent obligations as $2892.87. But no mention was made in either letter of the $8100 check, which the bank knew had not been paid. In accordance with the letters, the Lundahls caused the total of the two amounts shown in the letters, $78,-402.55 of the escrow money, to be paid to the bank. Ezra C. Lundahl and E. Cordell Lundahl testified that after this amount was paid they asked for the return of their guaranty, which had been entered into in May, 1964, by the individual defendants for the Lundahl corporation accounts. They testified that the parties agreed that it was to be returned later with other papers.

It was about a month and a half later, by a letter dated February 16, 1967, that the Royal Bank of Canada returned the $8100 check to the plaintiff bank; and on February 20, 1967, the latter charged that check to the Lundahl account, creating the "overdraft" therein of $7206.07. The Lundahls questioned the bank's right to do so, and that is the pivotal question in this case.

■ The plaintiff's contention is that it had accepted the check in question as an agent for collection only, and that it took upon itself no liability as the owner of the check. It is true that under the Uniform Commercial Code there is a presumption that a collecting bank acts as agent for its depositor. Sec. 70A–4–201(1), U.C.A.1953. However, this presupposes that the bank acts in accordance with its duty imposed by law; and this requires presentation to the payor bank in the due course of business, and, if the check is dishonored, notice to its depositor "by its midnight deadline [2] or within a longer reasonable time" under the circumstances. Sec. 70A–4–212(1), U. C.A.1953. If there is a substantial failure of the bank to perform this duty, it loses its right of charge-back. Sec. 70A–4–212, U.C.A.1953. The issue with respect to this duty was found against the plaintiff by the jury's answer to an interrogatory that:

We find the Bank was negligent because they failed to notify Lundahls Inc. in the time prescribed by law, or a rea-

2. The " 'Midnight deadline' with respect to a bank is midnight on its next banking day following the banking day on which it receives the relevant item or notice or from which the time for taking action commences to run, whichever is later." Sec. 70A–4–104(1)(h), U.C.A. 1953.

sonable time, about the second check not being honored by the Royal Bank of Canada.

This failure of the plaintiff bank to discharge its duty prescribed by the statutes discussed above makes it responsible for the resulting loss. Evidence was presented to the effect that with the passage of time conditions of the Heathfield Company changed substantially, and that if timely notice had been given, there would have been no loss due to its insolvency.

The resolution of the issue on accord and satisfaction by the jury also supports the position of the defendants so plainly that it is hardly susceptible of misunderstanding. Interrogatory No. 4 asked them:

Was there a complete accord and satisfaction between the parties on or about January 4, 1967, whereby all accounts were settled and compromised between the parties, including a promise, if any you find, on the part of the bank to surrender up the written guaranty?

To this the jury answered:

We the jury, agree on the first part of question No. 4. There was complete accord and satisfaction between the parties on January 4, 1967. We find that the guaranty was included in said agreement.

█ It is the Lundahls' position and testimony that the various amounts to be paid to the bank were discussed, particularly that a reference was made to the $8121.88 obligation, that as a result of their discussion of it, the interest on that item was waived, and that the amounts referred to above, totaling $78,402.55, were to discharge all of their liabilities, direct and contingent, including the obligation in controversy. Even though the evidence may be susceptible of a different conclusion, as plaintiff argues, it is also reasonably supportive of the finding made by the jury that "all accounts were settled and compromised between the parties."

The difficulty which exists in this case is that, notwithstanding the findings of the jury in favor of defendants as set forth above, which the trial court stated that he "accepted," "approved" and found "true and correct," he nevertheless awarded the plaintiff credit for the amount of the check. This was done on the basis of the court's "further finding" that the defendants knew or should have known of Heathfield's financial instability and, in addition, that they were kept fully informed of the plaintiff bank's continuing efforts to collect the check.

█ The effect of this "furthter finding" was actually to contravene the finding made by the jury that the plaintiff bank "was negligent because it failed to give Lundahls notice in the time prescribed by law, or a reasonable time, about the second

check not being honored by the Royal Bank of Canada." The same observation is pertinent to the action of the trial court with respect to the issue of accord and satisfaction. Notwithstanding what we have delineated above, the trial court made the "further finding" that the $8100 check "was specifically omitted from said settlement * * *." It is recognized that where a case is submitted to the jury on special verdicts, the trial court may make corrections of obvious errors or defects therein, and he may make additional findings on issues which have not been submitted to the jury, but are necessary to settle the issues involved.[3] But when a party has demanded a trial by jury he is entitled to have the jury find the facts, and it is not the trial court's prerogative to make findings inconsistent therewith and thereby defeat the effect of the jury's findings.

■ In consonance with the jury's answers to the interrogatories and what we have said above, that part of the trial court's judgment allowing the plaintiff bank to charge the $8100 check against the defendants is reversed; and the judgment awarded defendants for $893.93 on their counterclaim is affirmed. Costs to defendants (appellants).

CALLISTER, TUCKETT, and ELLETT, JJ., concur.

**HENRIOD, Justice (dissenting).**

I respectfully dissent. Although this case is cluttered up with numerous facts, some of a confusing or contradictory character, nonetheless there are a few that are not disputed and which appear to me to be quite simple and decisive, all in harmony with the trial court's judgment.

The only question in this case is whether a check for about $8100 made payable *to defendant Lundahl, endorsed and deposited by Lundahl,* with a condition *imposed by Lundahl* that it was *for collection only,* places an absolute liability on the bank to *collect the amount* from the maker's bank, in spite of hell and high water, failing which, the bank, *an obvious agent of Lundahl,* becomes, not an agent any more, but an unnamed *surety* without consideration. All this because of a claim of lack of notice of dishonor under some real or ethereal code provision that apparently has nothing to do with a "deposit for collection only." I think that the question should be resolved in favor of the trial court's conclusion that under the facts of this case the bank is not legally liable to contribute its own money for the *claimed* "loss" of money, that was not lost at all. Lundahl still has a claim for it against the maker, and if the amount is paid by the latter, whose obligation it is, obviously it would result in an unjust enrichment if plaintiff also paid. The cir-

3. See 53 Am.Jur. Trial § 1094.

cumstances that Lundahl did not or could not pursue the obligor should be no reason why a mere agent depositee for collection should transmute a primary obligation into a suretyship relationship sans any consensual aspect.

It might be noted that although the main opinion attributes liability to the plaintiff bank because of the check's dishonor by a foreign bank and First Security's failure to give notice thereof,—that conclusion is not quite true under the circumstances of this case. The foreign bank simply notified First Security that there were insufficient funds *presently* to pay the check but that it would be held for later payment unless otherwise advised. In such case First Security persisted in being Lundahl's agent for collection only, as is reflected in the bank's elimination of interest.

I am unimpressed by the stresses and strains indulged in argument anent the prerogative of the judge as opposed to those of the jury under a rule whose clarity, I would venture, has been unclarified and explained by not one, but many judicial interpretations, as is reflected in the annotations of both the state and federal rule, being 49(a) in both bailiwicks.

The bank should be protected against an unjust enrichment (Restatement, Restitution, Sec. 1, Unjust Enrichment), particularly since there is nothing inimical in the Commercial Code with respect to such protection.

There was no such thing as an accord and satisfaction in this case with respect to the check in question. The check simply was being held *by an agent,* for the purpose of *collection only.* Had this agent (the bank) *collected* on the check, but had not paid the proceeds over, the proceeds then may well have become an item includable in a true accord and satisfaction atmosphere.

The trial court should be affirmed.