Joseph P. Imperato, J.
I hereby find and decide that
1. Findings of fact — chronological summary
Monday, August 18, 1975 — Defendant Vernice Akpan deposited a check in the amount of $2,500 in the joint checking account she shared with her husband, defendant John I. *623 Akpan in Branch 102 of plaintiff Manufacturers Hanover Trust Company (hereinafter referred to as "Manufacturers”). The check was drawn on . First National City Bank by one Ronald Lawrence, and was payable to defendant Vernice Akpan.
Uncontradicted testimony at trial established that Lawrence had asked Mrs. Akpan to deposit the check and return the cash proceeds to him because of certain alleged marital difficulties between Lawrence and his wife.
Tuesday, August 19, 1975 — The $2,500 check was received by First National City Bank, and was promptly returned to the central note teller department of Manufacturers, with the notation inscribed "refer to maker”. The balance of Lawrence’s account had been placed in a sundry account due to an investigation and therefore no funds in the account were available for withdrawal.
• Friday, August 22, 1975 — Vernice Akpan was issued a check against her account at Branch 102 for the sum of $2,490.02 and received cash for it. Later that day, Mrs. Akpan paid over the money to Ronald Lawrence, after which time Mrs. Akpan never again saw Mr. Lawrence and his whereabouts cannot now be ascertained.
Monday, August 25, 1975 — Branch 102 first received notice from the central note teller department of Manufacturers that the $2,500 check had been returned. Defendant was thereafter notified of the overdraft and was informed that her account had been charged.
Plaintiff’s memo of its investigation of the Akpans’ account states that the Lawrence check was returned to Branch 102, two business days late and that the delay was caused by Manufacturers’ adjustment division.
II. Conclusions of Law
Plaintiff’s first theory of liability is based on subdivision (1) of section 4-212 of the New York Uniform Commercial Code which gives a collecting bank (plaintiff) a remedy of charge-back if it has made a provisional settlement with its customer which fails by reason of dishonor. But this remedy is conditioned on the requirement that the bank, "by its midnight deadline or within a longer reasonable time after it learns of the facts it returns the item or sends notification of the facts”.
"Midnight deadline” is defined by section 4-104 of the Uniform Commercial Code as "with respect to a bank is *624 midnight on its next banking day following the banking day on which it receives the relevant item or notice or from which the time for taking action commences to run, whichever is later”.
Thus, applying the midnight deadline rule in the instant case, plaintiff would have had to have given notice to Mrs. Akpan by midnight of Wednesday, August 20, 1975 in order to exercise its right of charge-back. Notice was not actually given until Monday, August 25, 1975.
Plaintiff relies on section 4-106 of the Uniform Commercial Code which states that a separate office of a bank is considered a separate bank for the purpose of determining time limits under articles 3 and 4 of the Uniform Commercial Code. But even considering Branch 102 as a separate bank and not bound by information of the check’s dishonor had by the central note teller’s department of Manufacturers, this cannot be construed to mean that the midnight deadline rule first began to run on Monday, August 25, 1975 when Branch 102 first received notice of the dishonor.
The official comment No. 4 to section 4-106 of the Uniform Commercial Code seems to deal with a situation such as in the instant case. "Similarly, the receipt of a stop payment order at one branch should not be notice to another branch so as to impair the right of the second branch to be a holder in due course of the item, although in circumstances in which ordinary care requires the communication of a notice or order to the proper branch of a bank, such notice or order would be effective at such proper branch from the time it was or should have been received
Ordinary care required in the instant case that notice be sent to Branch 102 by the midnight deadline of the central note tellers department on midnight Wednesday. Such notice would be effective at the time Branch 102 should have received notice, thus the midnight deadline for Branch 102 was midnight Thursday. Since notice of dishonor was not sent to defendant within the midnight deadline, the remedy of charge-back is unavailable.
Plaintiff also predicates defendant’s liability on the theory of "unjust enrichment” and "payment by mistake”. It is well-settled law, however, that where a plaintiff sues under the latter theory, restitution is denied if the payee had changed his position to his detriment in reliance on the payment, to the extent that such restitution would be inequitable. In the *625 instant case, defendant Vernice Akpan changed her position by turning over the proceeds of the check to Lawrence, in reliance upon Manufacturer’s implied representations that the Lawrence check had cleared. Plaintiff is therefore equitably estopped from proceeding under either theory, due to her change in reliance upon implied representations by Manufacturers.
Another basis for liability relied upon by plaintiff is section 4-207 of the Uniform Commercial Code which deals with warranties of a customer on presentment of an item. Section 4-207 states in part, that a customer transferring an item agrees that upon dishonor and any necessary notice of dishonor and protest, he will take up the item. By a provision in the depositor’s contract, any requirement of protest is waived.
The waiver of notice or protest in the contract must, however, be interpreted subject to subdivision (1) of section 4-103 which states that "the provisions of this Article may be varied by agreement except that no agreement can disclaim a bank’s responsibility for its own lack of good faith or failure to exercise ordinary care”.
Under the facts of this case, the waiver of protest cannot be upheld because to do so would mean an indorsement of plaintiff’s failure to exercise ordinary care as is required by paragraph (b) of subdivision (1) of section 4-202 (sending notice of dishonor).
As to plaintiff’s final theory of liability, that of holder in due course pursuant to the contract of indorsement, plaintiff is equitably estopped from so claiming because of its actions in allowing defendant to withdraw the funds on the implied representation that the Lawrence check had cleared.
For the afore-mentioned reasons, judgment is ordered for defendants, but without costs and disbursements.