**APPLIANCE BUYERS CREDIT CORPORATION, Plaintiff-Appellant,**

v.

**PROSPECT NATIONAL BANK OF PEORIA, Defendant and Third Party Plaintiff-Appellee,**

and

**Federal Reserve Bank of Chicago, Third Party Defendant-Appellee.**

No. 82–1808.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 1, 1982.

Decided May 24, 1983.

Robert D. Jackson, Westervelt, Johnson, Nicoll & Keller, Peoria, Ill., for plaintiff-appellant.

Charles G. Roth, Kavanagh, Scully, Sudow, White & Frederick, Peoria, Ill., for defendant and third party plaintiff-appellee.

Before CUDAHY, COFFEY, and TIMBERS,* Circuit Judges.

COFFEY, Circuit Judge.

This is an appeal from the district court's dismissal of the plaintiff's claim under section 4–212 of the Uniform Commercial Code on the grounds that the plaintiff failed to establish its damages. Affirmed.

The Appliance Buyers Credit Corporation, a Delaware corporation with its principal place of business in Michigan, is a finance company that provides wholesale "floor-plan financing" to appliance dealers.[1] The corporation makes monthly inspections of participating dealers' inventory to determine whether the dealers are current in their finance payments to Appliance Buyers. During one of Appliance Buyers' monthly inspections of the Nevius Appliance & Furniture inventory it was determined that Nevius had failed to report the sale of certain merchandise to Appliance Buyers and owed $65,736.78. Immediately following the inspection on October 17, 1979 Nevius gave a check to the Appliance Buyers Credit Corporation representative in the amount of $55,736.78 and delivered a $10,000 check to the corporation the next day, October 18, 1979; both checks were drawn on the Corn Belt Bank of Bloomington, Illinois. Appliance Buyers Credit Corporation deposited these two checks on October 18, 1979 with the Prospect National Bank, and Prospect National credited Appliance Buyers' account with a provisional credit. Prospect National processed these two checks through the Chicago Federal Reserve Bank who in turn forwarded the checks to the drawee bank, the Corn Belt Bank of Bloomington. On October 22, 1979, the Corn Belt Bank dishonored the checks due to insufficient funds (NSF) and notified the Federal Reserve Bank of the dishonor by telephone that day. On the day following, October 23, 1979, the Federal Reserve Bank of Chicago notified Prospect National Bank of the dishonor, by telephone, and returned the dishonored checks to the Prospect National Bank by mail. Prospect National, upon receipt of the NSF checks on October 29, 1979, immediately revoked the provisional credit given to the Appliance Buyers' account and notified Appliance Buyers of the dishonor that same day (October 29th). Appliance Buyers received the dishonored checks through the regular mail on the day following, October 30, 1979, and on the next day, October 31, Nevius Appliance & Furniture filed a voluntary petition for bankruptcy. Appliance Buyers then brought suit to recover the $65,736.78.

The district court dismissed the plaintiff's claim under section 4–202[2] of the Uniform Commercial Code (Ill.Rev.Stat. ch. 26 § 4–202) initially finding that Prospect National Bank was negligent in failing to notify the Appliance Buyers Credit Corporation of the dishonor of Nevius' checks by the October 24th midnight deadline, the day it received a telephone notification of the checks' dishonor. 505 F.Supp. 163. However, notwithstanding the fact that Prospect National was negligent in notifying Appliance

* Of the Second Circuit, by designation.

1. As a "floor-plan financier," Appliance Buyers finances the inventory of various appliance dealers and maintains a security interest in the merchandise so financed.

2. Ill.Rev.Stat. ch. 26 § 4–202 reads, in pertinent part:

"(1) A collecting bank must use ordinary care in

\* \* \* \* \* \*

(b) sending notice of dishonor or non-payment ... after learning that the item has not been paid or accepted, as the case may be; and

\* \* \* \* \* \*

(2) A collecting bank taking proper action before its midnight deadline following receipt of an item, notice or payment acts seasonably; taking proper action within a reasonably longer time may be seasonable but the bank has the burden of so establishing."

Buyers of the dishonor, in its order the district court also found that Appliance Buyers failed to establish its damages and therefore was not entitled to recover:

> "Because the plaintiff has not demonstrated that it had a reasonable chance to collect all or part of the amount of the checks, the amount plaintiff was actually damaged, if any, as a result of the bank's failure to exercise ordinary care in notification is pure speculation. The court will not indulge in such speculation. [Appliance Buyers] has not produced any evidence that if it had known of the dishonor on October 24, 1979, it might have had a reasonable chance to collect any part of the money represented by the checks that it can't recover in the bankruptcy proceeding. Because the court is unable to determine what an appropriate award of damages would be in this case, if any, none can be awarded." (Footnote and citations omitted).

The district court denied the Appliance Buyers Credit Corporation's motion to modify the above quoted court order regarding the corporation's failure to prove its damages:

> "The court is not convinced, however, that § 4–212 gives a depositor a complete and automatic windfall if the bank is late in notification of dishonor of deposited and provisionally-credited items, when it is not proved that such lateness made any financial difference to the depositor, or, if so, within reasonable limits, how much difference it made. The court is not willing to adjudicate such an inconsistency of consequences between two sections of the Uniform Commercial Code dealing with the same subject, especially in a case where plaintiff took large checks it had substantial reason to suspect might 'bounce,' and now seeks thereby to saddle its bank with liability thereon after its debtor's bankruptcy."

The plaintiff (Appliance Buyers Credit Corp.) appealed.

Appliance Buyers does not "seek review . . . of the trial court's dismissal of [its] section 4–202 claim," recognizing that "the trier of fact's weighing of the evidence is not an appropriate subject for appellate review in this case." Because there is no challenge to the district court's application of section 4–202, the question in this case is one of first impression: is a bank strictly liable as the plaintiff contends for the face value of a check under section 4–212 of the Uniform Commercial Code if, after failing to give the depositor timely notice of the check's dishonor, the bank charges back the depositor's account?

Appliance Buyers Credit Corp. asserts that section 4–212 makes a bank liable for the face value of a check when the bank breaches its duty to give a depositor timely notice of the check's dishonor, as under section 4–212 timely notice of dishonor is a pre-condition to the bank's right to charge-back. While it is clear that the drafters of section 4–212 of the Uniform Commercial Code intended to condition a bank's right to charge-back upon the giving of timely notice of dishonor, section 4–212 fails to set forth language holding a bank "accountable" for the face value of a dishonored check if and when the bank fails to give timely notice of dishonor.

Ill.Rev.Stat. ch. 26 § 4–212 provides:

> "(1) If a collecting bank has made provisional settlement with its customer for an item and itself fails by reason of dishonor, suspension of payments by a bank or otherwise to receive a settlement for the item which is or becomes final, the bank may revoke the settlement given by it, charge back the amount of any credit given for the item to its customer's account or obtain refund from its customer whether or not it is able to return the items if by its midnight deadline or within a longer reasonable time after it learns the facts it returns the item or sends notification of the facts. These rights to revoke, charge back and obtain refund terminate if and when a settlement for the item received by the bank is or becomes final (subsection (3) of section 4–211 and subsections (2) and (3) of section 4–213)."

A reading of section 4–212 reveals that while the section conditions a bank's right to "charge-back" on a timely notice of dishonor, it is silent on the measure of damages a depositor can recover, if any, when the bank breaches its duty of giving a timely notice of dishonor and still charges back the provisionally credited check. In its brief, Appliance Buyers contends that the bank should be held strictly liable for the face value of the dishonored check and for any other damages arising out of the bank's improper charge-back. The plaintiff has failed to supply the court and we have been unable to find any legal support either in the Uniform Commercial Code or case law for Appliance Buyers' unique contention that banks should be held strictly liable for the face value of dishonored checks under section 4–212. For example, certain sections of the Uniform Commercial Code such as 4–302(a), 4–213(1)(d) and 4–213(3) do impose liability on a bank for the face value of items in given situations, but we have found no similar obligation under section 4–212. The specific language of sections 4–302(a), 4–213(1)(d) and 4–213(3) holds the bank "accountable for the amount of" the item in question. Cases construing these sections hold that the term "accountable" is "the operative term . . . which imposes liability for the face amount of a check . . . ." *Colorado National Bank v. First National Bank & Trust Co.,* 459 F.Supp. 1366, 1372 (W.D.Mich.1978). Section 4–212 does not contain the "operative term" holding a bank "accountable" for the face value of a check if the bank improperly charges back the amount of a provisional credit against the depositor's account. It is obvious that if the drafters of the Uniform Commercial Code had intended to make a bank liable for the face value of a check under section 4–212, they would have held the bank "accountable" in specific language for the face amount of the check as they have under other Code sections. Because section 4–212 does not contain any language holding a bank "accountable" for the face value of a dishonored check, nor has our independent research uncovered any case law holding a bank "accountable" under

section 4–212, we hold that the drafters of section 4–212 did not intend to impose absolute liability on a bank if the bank charged back a dishonored check against the depositor's account after failing to give the depositor timely notice of the check's dishonor.

Because section 4–212 is silent concerning a depositor's measure of damages arising out of an improper charge-back, we will examine the Code and case law to determine the proper standard to be applied when deciding what Appliance Buyers must establish in order to recover under section 4–212. Ill.Rev.Stat. ch. 26 § 4–103(5), the general damages section of the Uniform Commercial Code, provides:

> "The measure of damages for failure to exercise ordinary care in handling an item is the amount of the item reduced by an amount which could not have been realized by the use of ordinary care, and where there is bad faith it includes other damages, if any, suffered by the party as a proximate consequence."

The official comment to section 4–103 states that "[w]hen it is established that some part or all of the item could not have been collected even by the use of ordinary care the recovery is reduced by the amount which would have been in any event uncollectible." In applying this standard to the instant dispute, the district court ruled that there was serious question as to whether Appliance Buyers could have recovered any of the disputed $65,736.78 even if it had received timely notice of the checks' dishonor, as Nevius Appliance was in severe financial difficulty during the period in question and filed for bankruptcy just nine days after the checks were dishonored. Indeed, the district court found that the "fact of bankruptcy within two weeks of issuance of the first check and other evidence concerning Nevius' [insolvency] during the relevant period . . . raise serious doubt that [Appliance Buyers] could have collected any part of the amount of the checks, even if notified of the checks' dishonor in timely fashion." When evidence at trial demonstrated that "some or all of the item could not have been collected" had Appliance Buyers re-

ceived timely notice of dishonor, the district court found that under section 4–103 the burden was on Appliance Buyers to establish "that it had a reasonable chance of collecting something on the checks, before any award of damages caused by [Prospect National's] negligence could be made." We hold the district court was correct in placing the burden on Appliance Buyers to establish their damages and in dismissing the corporation's claim on the grounds that Appliance Buyers failed to prove to the court's satisfaction that they would have been able to recover any funds from Nevius had they in fact received timely notice from the bank.

■ A depositor bears the burden of establishing its actual damages under section 4–103 in order to recover damages arising out of the negligence of a bank for failing to give a timely notice under other sections of the Code. *See generally Marcoux v. Van Wyk*, 572 F.2d 651 (8th Cir.1978); *Whalen & Sons Grain Co. v. Missouri Delta Bank*, 496 F.Supp. 211 (E.D.Mo.1980); and *Bank of Wyandotte v. Woodrow*, 394 F.Supp. 550 (W.D.Mo.1975). It is the Appliance Buyers' position that the bank's failure to give timely notice of dishonor has caused their difficulty in proving damages since Nevius' business records do not reveal whether Appliance Buyers could have recovered a measure of damages from Nevius Appliance by repossessing those items in which Appliance Buyers had a security interest. Thus, under the plaintiff's analysis, the bank must prove the amount Appliance Buyers could not have collected even had the bank given timely notice of dishonor and if it is unable to meet this burden, Prospect National should be held liable for the face value of the checks. However, Appliance Buyers has failed to cite any sections of the Code or case law that do in fact shift the burden of proof from the depositor to the bank to prove the extent of a depositor's loss.

■ In the absence of "accountability" under other Uniform Commercial Code sections such as section 4–202, courts have required depositors to prove the extent of their actual damages. For example, in *Marcoux v. Van Wyk* and the other cases cited herein dealing with untimely notice, courts clearly place the burden on a depositor seeking recovery to prove the amount "they would have had at least a reasonable chance to collect. . . . It is not enough to show that by a fortuitous combination of unlikely events there was a dim hope of collection." 572 F.2d at 655. Furthermore, the bank will not be held liable "unless there is a clear causal relationship between the bank's actions and the plaintiff's loss." *Whalen & Sons Grain Co.*, 496 F.Supp. at 215. In a similar, pre-Code case, one court held "the burden [is] on the [depositor] not only to prove negligence on the part of the defendant [bank] but also the amount of loss in fact sustained as a result of that negligence. The defendant is not liable unless it is made to appear that collection could have been made, and was not made, because of want of reasonable effort and diligence on defendant's part." *Schooler Motor Co. v. Bankers' Trust*, 216 Iowa 1147, 247 N.W. 628, 630 (Iowa 1933). A fair reading of the Code and relevant case law reveals that since depositors must prove untimely notice and actual damages as conditions precedent to recovery under section 4–202, under section 4–212 depositors must also prove that they received untimely notice as well as the amount of actual damages suffered as a result of the untimely notice.[3]

The only decision that has been cited to the court in support of the Appliance Buyers' position is a case from the Civil Court

---

**3.** Contrary to the dissent's assertion, the language of section 4–103 does not place the burden on the bank to prove what "would have been uncollectible even if timely notice had been given." Rather, if the evidence at trial raises a question that some or all of the item was in any event uncollectible, under section 4–103 and the cases construing it, the burden

remains on the plaintiff/depositor to prove their actual damages. This result is consistent with the time-honored principle of law that a party bringing a claim has the burden of proving their damages to a reasonable degree of certainty. The position advocated by the dissent is apparently based solely on policy considerations.

of the City of New York, *Manufacturers Hanover Trust Co. v. Akpan,* 91 Misc.2d 622, 398 N.Y.S.2d 477 (N.Y.Civ.Ct.1977), where the bank sought to recover $2,500 from the defendant/depositor for a check which had been returned to the bank. The court held that the bank could not charge-back the depositor's account under section 4–212 because the bank had failed to give the depositor timely notice of dishonor by the midnight deadline. The *Akpan* decision is clearly distinguishable from the instant case in several respects: (1) In *Akpan,* the bank allowed the depositor to withdraw $2,490 against the $2,500 check provisionally credited to the depositor's account; there is nothing in the record to suggest that Prospect National allowed Appliance Buyers to draw against their provisional credit; (2) The *Akpan* court found that the depositor had detrimentally relied on the fact that the bank had allowed her to draw against the provisionally credited item; there is no evidence of detrimental reliance in the instant case; and (3) In *Akpan* the issue of the depositor's damages (i.e. what would have been collected had the bank given timely notice) was not before the court. There, the bank was notified of the check's dishonor on August 19 and yet the bank permitted the depositor to withdraw $2,490 on August 22, a sum the defendant then gave to the maker of the check. It is obvious that had the bank notified the depositor that the $2,500 check had been dishonored on the 19th, the depositor never would have given the $2,490 to the check's maker on the 22nd. Thus, in *Akpan* there was no doubt but that the depositor was actually damaged by the bank's failure to give timely notice of dishonor and that the damage was the $2,490. In the instant case, the amount of Appliance Buyers' damages is pure speculation. The district court properly found proof was lacking that Appliance Buyers was actually damaged by the bank's untimely notice; on the contrary, the court found there was serious doubt as to whether Appliance Buyers could have collected any money had it received timely notice. Therefore, we hold that *Manufacturers Hanover Trust Co. v. Akpan* is not controlling in this case.

The district court in its decision noted that when Appliance Buyers accepted Nevius' checks, Appliance Buyers "had substantial reason to suspect [the checks] might 'bounce' ...." Indeed, testimony was presented at trial that a representative of Appliance Buyers was told by Ken Nevius that he (Nevius) was unsure whether "we have enough money to cover this check." Moreover, one of Appliance Buyers' employees testified that although Nevius Appliance had agreed to make weekly payments on its account to Appliance Buyers, Nevius had not done so in the last month and a half prior to the time they issued the two NSF checks in question. Now, Appliance Buyers is attempting to shift the loss, caused by their own lax financial policy, to Prospect National Bank. Finance companies such as Appliance Buyers Credit Corporation have the obligation to actively police the floor plans of participating dealers and to ensure that dealers are current in their payments. When a finance company fails to develop a sound financial policy and allows dealers to fall behind in their payments, the finance company must bear the burden if the dealers fail to pay their bills when due. It is apparent from the record that having failed in its duty to protect its investments by keeping tighter reins on Nevius' account, absent proof that Prospect National Bank's untimely notice actually damaged the corporation, Appliance Buyers cannot now shift the responsibility for their own negligence to the bank.

We agree with and affirm the district court's decision and hold that in order for the plaintiff in this case to recover for damages arising out of Prospect National Bank's alleged failure to give timely notice of dishonor as required by section 4–212 of the Uniform Commercial Code, the burden is on the depositor (Appliance Buyers) to establish that Prospect National failed to give timely notice, and the amount of damage Appliance Buyers actually suffered as a result of Prospect National's untimely notice.

CUDAHY, Circuit Judge, dissenting.

The plain language of the statute in question here preconditions a collecting bank's

right to charge back upon its giving notice of dishonor to its customer before midnight of the next banking day: "the bank may ... charge back the amount of any credit given for the item to its customer's account ... *if* by its midnight deadline or within a longer reasonable time after it learns the facts it returns the item or sends notification of the facts." Ill.Rev.Stat. ch. 26, § 4–212 (emphasis supplied). The Official Comment to the Uniform Commercial Code emphasizes the importance of the automatic, domino-like settlements which are made possible between collecting banks by the operation of this simple rule, as "the provisional settlements become final simply with the lapse of time." Uniform Commercial Code § 4–212, comment 1. The commentary reiterates that this "right of charge-back or refund must be exercised promptly after the bank learns the facts." *Id.,* comment 3.[1]

Numerous courts which have been called upon to interpret section 4–212(1) have concluded that a bank which fails to send notice of dishonor before its midnight deadline loses the right to charge back against the customer's account; among these cases is one from the Illinois appellate court which should be especially influential upon a federal court sitting in a diversity case. *Wells Fargo Bank v. Hartford National Bank & Trust Co.,* 484 F.Supp. 817, 822 (D.Conn. 1980); *Dozier v. First Alabama Bank of Montgomery,* 363 So.2d 781, 783 (Ala.Civ. App.1978); *Salem National Bank v. Chapman,* 64 Ill.App.3d 625, 21 Ill.Dec. 414, 381 N.E.2d 741, 743 (5th Dist.1978); *Fromer Distributors v. Bankers Trust Co.,* 36 A.D.2d 840, 321 N.Y.S.2d 428, 430 (1971); *Manufacturers Hanover Trust Co. v. Ak-*

*pan,* 91 Misc.2d 622, 398 N.Y.S.2d 477, 479 (N.Y.Civ.Ct.1977); *First Security Bank of Utah v. Lundahl, Inc.,* 22 Utah 2d 433, 454 P.2d 886, 888 (1969); *see also* 6 J. Reitman, H. Weisblatt, W. Schlichting, T. Rice & J. Cooper, *Banking Law* § 138.06[2] (1981 and Supp.1982) and cases cited therein. Quite clearly, the intent of the Code's drafters, reflected in its plain language, was to precondition the right of charge-back under section 4–212 upon timely notice of dishonor.

The majority argues that this conclusion gives rise to a species of strict liability under section 4–212 which is inconsistent with section 4–103(5). This focus upon a supposed contradiction between strict liability and liability based upon negligence is, in my opinion, wide of the mark. Our task here is to construe together three provisions of Article 4. One is a provision granting banks a right of charge-back under certain conditions, Ill.Rev.Stat. ch. 26, § 4–212(1). One is a provision imposing a duty of ordinary care upon banks, which includes a duty to send notice of dishonor before midnight of the next banking day, Ill.Rev.Stat. ch. 26, § 4–202.[2] One is a general provision about the measure of damages under Article 4, Ill.Rev.Stat. ch. 26, § 4–103(5). None of the three provisions directly answers the two-pronged question at issue here: 1) Is a bank liable for the face value of a check if it fails to send notice of dishonor before the midnight deadline? and 2) If the bank is liable for this failure, what is the measure of damages?

Attempting to read these three provisions together so as to do the least violence to the language of each, however, I would conclude that section 4–212 raises a presump-

---

1. The Illinois Code Comment indicates that a bank's sole remedy prior to section 4–212 was to hold the depositor liable upon his contract of indorsement. Ill.Rev.Stat. ch. 26, § 4–212, comment 1.

2. Section 4–202 provides in relevant part that:
  (1) A collecting bank must use ordinary care in

.      .      .      .      .

  (b) sending notice of dishonor or nonpayment or returning an item

.      .      .      .

  (2) A collecting bank taking proper action before its midnight deadline following receipt of an item, notice or payment acts seasonably; taking proper action within a reasonably longer time may be seasonable but the bank has the burden of so establishing.
Ill.Rev.Stat. ch. 26, § 4–202.

tion of liability[3] when a bank fails to meet its duty to notify the customer in the time prescribed. However, this presumption is still subject to the damage provision of section 103(5):

> The measure of damages for failure to exercise ordinary care in handling an item is the amount of the item reduced by an amount which could not have been realized by the use of ordinary care....

Ill.Rev.Stat. ch. 26, § 4–103(5). This section incorporates a rule of causation, that is, a bank will not be held responsible for losses which its conduct did not cause. The section also suggests a procedure, involving the use of a presumption, for excluding damages not caused by failure to notify. In the case at hand, this reading of the statutory provisions requires that we *presume* Prospect National's default has injured Appliance Buyers and that the amount of that injury was equivalent to the face value of the check. However, this presumption could be rebutted by evidence that the item in question would have been uncollectible even if timely notice had been given. The language of section 4–103(5), moreover, by prescribing the face amount of an item as a baseline to be "reduced," seems to support placement of the burden of persuasion on this issue upon the bank.[4]

I realize that to shift the burden of persuasion to the bank will require banks to rely on information which may be more immediately accessible to their customers, but this is a hurdle which may be surmounted by discovery. I believe it is more significant that failure to shift the burden would leave the onus entirely upon the depositor even though it is the bank's breach of duty which may have brought about the alleged harm. Judge Morgan seems to have left the burden of persuasion on the depositor rather than on the bank. I would therefore remand this case for further findings, based on a shift of the burden of persuasion as I

have indicated, and for a determination of what damages, if any, the plaintiff suffered due to receipt of the notice of dishonor on October 29 rather than on the date statutorily prescribed; in order to limit its responsibility for the loss suffered, the bank would be required to show by a preponderance of the evidence that earlier notice of dishonor would not have permitted the plaintiff to mitigate its damages.

I therefore respectfully dissent.

---

3.   Whether the liability is one based on negligence or is liability without fault ("strict liability") is not really relevant here.

4.   One court has described this provision as "a shield in the hands of a negligent defendant," rather than "a sword in the hands of a plaintiff." *Wells Fargo Bank v. Hartford National Bank & Trust Co.*, 484 F.Supp. at 822 (concluding that section 4–103(5) was thus irrelevant to an action based on section 4–212).