(June 30, 1992)

■ BANK OF NEW YORK, Respondent, v ASATI, INC., et al., Appellants, et al., Defendant.—Order, Supreme Court, New York County (Carol E. Huff, J.), entered December 7, 1990, denying the Asati defendants' motion pursuant to CPLR 3211 (a) (1) and (7) to dismiss the complaint, affirmed, with costs and disbursements.

The issue dividing us is one of law, as to which we agree with the IAS court that "[d]elayed notification of dishonor does *not* automatically preclude the depository bank from charging back or reversing provisional credit" (emphasis in original; *see, Northpark Natl. Bank v Bankers Trust Co.*, 572 F Supp 524, 529-530; *Appliance Buyers Credit Corp. v Prospect Natl. Bank*, 708 F2d 290, 294-295), and accordingly affirm. *Fromer Distribs. v Bankers Trust Co.* (36 AD2d 840) and *Manufacturers Hanover Trust Co. v Akpan* (91 Misc 2d 622), upon which the dissent relies, are not controlling.

In *Fromer (supra)*, the drawee bank had made final payment on the check, and thus the depository bank was barred from charging back its customer because the right to charge-back terminates when "a settlement for the item [received by the bank] is or becomes final" (UCC 4-212 [1]; *see, Northpark Natl. Bank v Bankers Trust Co., supra,* at 530, n 16 ). In the case at bar, however, the check was dishonored; no final payment was made. The dissent's reliance on *Manufacturers Hanover Trust Co. v Akpan* (91 Misc 2d 622, *supra),* is similarly misplaced. While the court in that case, as the *Northpark* court noted in distinguishing it, denied the remedy of charge-back for failure to notify the customer by the midnight deadline, "causation [was] established because the [collecting bank's] failure led to a detrimental change in [the customer's] position, which change could have been avoided by prompt notification." *(Northpark Natl. Bank v Bankers Trust Co., supra,* at 530.) In this case there has been no change in the customer's position. In any event, the holding in *Manufacturers Hanover* is not binding on this court.

In our opinion, the extent of Uniform Commercial Code § 4-212 (1)'s requirements is still an open question and the better view is that the statute "establishes a duty of care, not a

condition to the right to charge-back." *(Northpark Natl. Bank v Bankers Trust Co., supra,* at 529.)

We are all in agreement that the IAS court's denial of defendants' motion to dismiss as to the remaining causes of action, predicated on fraud and conversion and unjust enrichment, should be affirmed. It is sufficiently alleged that Asati and its officers defrauded plaintiff bank by withdrawing funds knowing that the air structure, in payment for which the drawer issued the check in question, had collapsed and that the drawer would stop payment on the check and, thus, that the account would have insufficient funds to cover the $600,000 withdrawal. A duty to disclose may arise "where a party has superior knowledge not available to the other." *(Callahan v Callahan,* 127 AD2d 298, 300.) The bank has also adequately pleaded the elements of a cause of action for unjust enrichment. Concur—Murphy, P. J., Sullivan and Rubin, JJ.

Rosenberger and Kassal, JJ., dissent in part in a memorandum by Kassal, J., as follows: Plaintiff, The Bank of New York ("BNY"), brought this action to recover approximately $570,000 on an overdraft created by the dishonor of a $610,205 check made payable to defendant Asati, Inc. ("Asati"), and deposited to said defendant's account at the Harrison, New York branch of BNY. The check, which was issued by defendant CWM Chemical Services, Inc. ("CWM"), from its account with First Union National Bank of North Carolina ("First Union"), represented partial payment on a contract entered into by Asati and CWM on October 20, 1989.

The subject contract provided that Asati would manufacture and sell to CWM an air-supported structure or "bubble", for installation over a CWM construction site in New York. Upon delivery of the structure, CWM was to pay Asati $681,350, with the balance to be paid in subsequent installments.

On or about December 21, 1989, CWM issued a check payable to Asati in the amount of $610,205, which Asati deposited into its BNY account in Harrison, New York on December 29, 1989. BNY forwarded this check to First Union for payment. On January 2, 1990, the air structure collapsed, and CWM directed First Union to stop payment on its check. Representatives of Asati conducted a visual inspection of the damaged structure on the morning of January 3, 1990 and, that afternoon, one of Asati's principals, defendant Silber, inquired of BNY's branch manager, Dick Stout, whether the CWM check had cleared. The parties are in disagreement as to Mr. Stout's response, with defendants contending that he

replied affirmatively, and Stout asserting that he merely advised defendants that BNY would make the proceeds of the CWM check available to Asati as of that day.

At approximately 3:00 P.M. on January 3, 1990, defendant Silber went to the BNY's Harrison branch and drew three certified checks on Asati's account, each in the amount of $200,000, payable to defendants Fraioli, Weiner, and himself. Mr. Stout approved the certified checks, which were issued at approximately 3:15 P.M.

Minutes later, at 3:32 P.M. that same afternoon, BNY's Domestic Wire Transfer Department in Utica, New York, was notified by First Union that its customer, CWM, had placed a stop payment order on the $610,205 check, and that it was, accordingly, being dishonored. Due to an error in BNY's communications systems, this information was not transmitted from the BNY Utica office to the BNY Harrison branch. It was not until January 8, 1990, that Harrison received the dishonored CWM check which, when entered into its system that night, created an overdraft of over $570,000 in the Asati account.

On the morning of January 9, 1990, Mr. Stout telephoned defendant Weiner, and demanded that the three ˙certified checks be returned. Upon Asati's failure to comply, this action was commenced.

As pertinent to this appeal, the complaint asserts three causes of action against Asati and its principals, the named individual defendants. The first cause of action seeks to charge-back the Asati account for the overdraft sum, pursuant to the provisions of Uniform Commercial Code § 4-212 (1). The second cause of action alleges fraud, and the third cause of action seeks recovery under the theory of unjust enrichment. Defendants moved to dismiss the complaint for failure to state a cause of action and on the basis of documentary evidence (CPLR 3211 [a] [1], [7]), and a majority of this Court has affirmed the IAS court's denial of that relief. For the reasons that follow, I would modify the order appealed from to the extent of dismissing the first cause of action and, accordingly, I respectfully dissent in part.

Pursuant to UCC 4-212 (1), a collecting bank has a remedy of charge-back if it has made a provisional settlement with a customer, which subsequently fails due to dishonor of a check deposited to the customer's account. The right of charge-back is, however, expressly conditioned upon the requirement that the collecting bank "by its midnight deadline or within a

longer reasonable time after it learns the facts * * * returns the item or sends notification of the facts" to the customer *(id.)*. The failure of a bank to meet the midnight deadline for notification of dishonor will result in the loss of the charge-back rights *(Fromer Distribs. v Bankers Trust Co.,* 36 AD2d 840; *Manufacturers Hanover Trust Co. v Akpan,* 91 Misc 2d 622, 623-624).

In the case at bar, BNY received notice of dishonor at its Utica branch, at 3:32 P.M. on January 3, 1990. Because this was subsequent to the close of BNY's banking day, notice was deemed to have been received on Thursday, January 4, and the deadline was, therefore, midnight on Friday, January 5 (UCC 4-104 [1] [h]). It is undisputed that BNY did not give Asati notice of the dishonor until January 9, 1990. For these reasons, it is my view that BNY failed to meet its deadline for recovering the overdraft pursuant to UCC 4-212, and its cause of action thereunder should have been dismissed.

I join with the majority in holding that the denial of defendants' motions to dismiss the remaining causes of action, which are predicated on fraud and unjust enrichment, should be affirmed. The evidence is sufficient to establish the claim that the Asati principals were aware the air-support structure had collapsed prior to their apparently rushed withdrawal of $600,000 in certified checks, and that they engaged in fraud by knowingly concealing both this fact and that CWM was preparing to stop payment on the check *(see, Marine Midland Bank v Russo Produce Co.,* 50 NY2d 31, 43). The fraud cause of action does not fail for lack of duty to inform BNY, since such duty does not arise solely from a confidential or fiduciary relationship, but may be based in superior knowledge *(Callahan v Callahan,* 127 AD2d 298, 300). Moreover, it was not merely the defendants' silence which constitutes the alleged fraud, but the affirmative act of withdrawing $600,000 from the account. Similarly, the contentions underlying BNY's complaint lead to the conclusion that the motion to dismiss the cause of action based on unjust enrichment was properly denied *(see, McGrath v Hilding,* 41 NY2d 625, 629).