[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In his eleven count complaint the plaintiff seeks the recovery of money damages to compensate him for non-payment of a check for $26,250.00 which was payable to the plaintiff. The plaintiff deposited the check to his cash management account with the defendant Merrill, Lynch, Pierce, Fenner Smith, Inc. ("Merrill Lynch"). Merrill Lynch in turn deposited the check to Merrill Lynch's account at the defendant Connecticut National Bank ("CNB"). The check was returned to the plaintiff without it being paid and the drawer was found insolvent before the plaintiff was able to obtain payment of the check. The plaintiff contends that his loss resulted from the negligence of the defendants and their breach of various provisions of the CT Page 1007 Uniform Commercial Code.
Most of the facts are not in dispute. In 1987 the plaintiff, a business executive, resided in Brussels, Belgium, where he worked as treasurer of a corporate affiliate of the Exxon Corporation. In November the plaintiff sold 875 shares of stock in a corporation owned by the Halsey family known as Essex Engineering Company located in Essex, Connecticut. The sale price was $26,250.00 and a check in that amount was forwarded to the plaintiff's father, who lived in New Haven. The plaintiff's father handled the sale on behalf of various members of the Halsey family. After speaking with the plaintiff about how to process the check, the plaintiff's father mailed it to the plaintiff in Brussels.
The uncertified check, which was dated November 4, 1987, was drawn on Barclays Bank in the United Kingdom. The drawer was Fernplan Limited, a corporation with offices in London. The plaintiff did not recall exactly when the check arrived in Brussels, but the check was in his possession on November 23, when he prepared a deposit slip and endorsed the check "For Deposit Only." The plaintiff wanted the check deposited to his cash management account at Merrill Lynch in New Haven. (A Merrill Lynch cash management account is similar to a checking account, but has certain additional features.)
The plaintiff did not recall exactly how he mailed the check to Merrill Lynch. There is no dispute, however, that the check was received at Merrill Lynch in New Haven on Monday, November 30 and deposited on that same day together with other checks to Merrill Lynch's account at Connecticut National Bank. The plaintiff received a receipt for the deposit from Merrill Lynch.
One fact which is very much in dispute is when CNB returned the check to Merrill Lynch. Because the check was drawn on a foreign bank although made out for U.S. currency, the check could not be deposited to Merrill Lynch's account in the same manner as a cash item and it had to be returned. CNB contends that it returned the check to Merrill Lynch on December 3. However, the next Merrill Lynch record concerning the check is dated December 16, when Merrill Lynch debited the plaintiff's account because of the return of the check. Merrill Lynch then mailed the check back to the plaintiff in Brussels together with a form noting that it was being returned because it was drawn on CT Page 1008 a foreign bank.
The plaintiff was away from Brussels on vacation from January 1 to January 10, 1988. The plaintiff testified that when he returned on January 10 or during the week thereafter, he received the check and the return notice from Merrill Lynch. He also received a letter dated January 5 and addressed to him care of his father in New Haven. The letter was from K.R. Gamwells, Secretary of U.K. Video in England, apparently a related company to Fernplan, and informed Halsey that because the check for $26,250.00 was issued two months earlier and had not been cashed, a stop payment order had been placed against the check. The plaintiff then unsuccessfully made attempts to obtain a wire transfer for the funds. Ultimately he hired an attorney to pursue the matter. However, after making some effort at collection, the attorney informed the plaintiff that Fernplan Limited had gone out of business and was insolvent.
In an effort to make the complex commercial and international factual background of this case fit some cognizable cause of action, the plaintiff sets forth his claim against Merrill Lynch and CNB in an eleven count complaint. Many of the claims were not sustained by the evidence at trial; for example, plaintiff's claim that Merrill Lynch had a practice of having a customer's account representative telephone the customer with regard to significant changes in the customer's cash management account, such as the debit to the plaintiff's account after the Fernplan check was returned unpaid by CNB. Other claims of the plaintiff were apparently abandoned; for example, plaintiff's claim that both Merrill Lynch and CNB breached their duty of good faith to the plaintiff. This claim was not briefed by the plaintiff in his extensive post-trial memorandum nor was it supported by any evidence at trial. With respect to Merrill Lynch, however, the plaintiff did sustain the allegations of the First Count of the complaint.
In this count the plaintiff alleges that Merrill Lynch is a collecting bank within the meaning of the Uniform Commercial Code and that it breached its duty of ordinary care under Section 4-202 (1) of the Code in various respects. Merrill Lynch disputes that it was acting as a collecting bank in this transaction and further denies any failure to use ordinary care.
There is little question that Merrill Lynch is a "bank" within the meaning of Conn. Gen. Stat. 42a-1-201. Merrill CT Page 1009 Lynch has been found in other cases to be a bank in accord with the UCC definition. Asian International, Ltd. v. Merrill, Lynch, Pierce, Fenner Smith, Inc., 435 So.2d 1058 (La.App. 1983). Other stock brokerage firms which accept deposits and allow withdrawals in the regular cause of business have also been found to be banks within the meaning of the UCC. Lichtenstein v. Kidder, Peabody and Co., Inc., 727 F. Sup. 975
(W.D.Pa. 1989). The court finds that Merrill Lynch acted as a "collecting bank" in the incident in question because it was "handling an item for collection" and it was not the payor bank. Conn. Gen. Stat. 42a-4-105 (5).
The plaintiff contends that Merrill Lynch failed to use ordinary care in the following respects: (a) it accepted the plaintiff's check and credited his account when it knew or should have known that CNB would not process the check; (b) it failed to return the check to the plaintiff immediately after receiving it, (c) it failed to send notice of dishonor by the midnight deadline set forth in Conn. Gen. Stat. 42a-4-202 (2); (d) it failed to notify the plaintiff that CNB had returned the check until January, 1988; (e) it failed to present the check to Barclays Bank of New York N.A.; and (f) it failed to present the check to a bank other than CNB. The evidence sustained the first of these allegations: that when it accepted the plaintiff's check and credited his account, Merrill Lynch knew or should have known that CNB would not process the check in the manner in which it was deposited.
On November 30, 1987 Merrill Lynch deposited the plaintiff's check at CNB's office in New Haven as part of a bulk deposit, a deposit of twenty-two different items. Merrill Lynch's account at CNB was a simple deposit account and all items to be deposited are supposed to be cash items. The Fernplan check, like all items drawn on a bank outside the United States, was not a cash item.
The Merrill Lynch cashier who prepared the check for deposit recognized that it was drawn on a foreign bank. The cashier applied a fourteen-day hold to the deposit because the check was drawn on a foreign bank. The cashier then included the check in the bulk deposit. The acceptance of the check by Merrill Lynch for deposit was consistent with its own Procedures Manual. Section 7.3.6 of the manual provides, "Checks drawn on a foreign bank but payable in U.S. currency, are acceptable for deposit. However, since the clearing time may be as much as six CT Page 1010 weeks, a check of this type is not acceptable as payment for a transaction."
The Fernplan check, although it could be deposited, could not be deposited at CNB as part of a bulk deposit. CNB's Bank Operating Procedures provided, "Items drawn in U.S. Dollars on banks outside the United States. These items cannot be deposited. Items which are deposited will be charged back to the depositor and must be entered for collection." An employee of CNB (which was known as Shawmut at the time of trial) explained the important differences between a deposit of an item and an item "entered for collection." An item which is deposited is given immediate credit. However, with an item entered for collection, credit is not given until the bank notifies the customer that the check has been paid. To process the Fernplan check through CNB, Merrill Lynch should have entered it for collection or deposited it separately as a foreign item. If presented to CNB in either of these two ways, CNB would have been able to proceed with the collection process. Clearly, Merrill Lynch did not know how to deposit the Fernplan check at CNB in a manner so that it could be processed.
Conn. Gen. Stat. 42a-4-202 (a) provides, "A collecting bank must exercise ordinary care in: (1) Presenting an item or sending it for presentment . . ." "Ordinary care" is defined in Conn. Gen. Stat. 42a-3-103, "`ordinary care' in the case of a person engaged in business means observance of reasonable commercial standards, prevailing in the area in which the person is located, with respect to the business in which the person is engaged."
Two Merrill Lynch employees testified that once Merrill Lynch accepted the Fernplan check, the company was obligated to expeditiously obtain credit for the item. However, Merrill Lynch's deposit of the check as part of a bulk deposit was not consistent with CNB's requirements for processing an item drawn in U.S. dollars on a bank outside the United States. Moreover, CNB's requirement that such a check be entered for collection or separately deposited is a requirement imposed by all commercial banks. As one CNB witness testified, Merrill Lynch, a large national and international financial institution, should have known of CNB's policy, the same policy of all commercial banks with respect to the collection of foreign items drawn in U.S. dollars. Merrill Lynch failed to exercise ordinary care in sending the Fernplan check for presentment in that it failed to CT Page 1011 observe the prevailing reasonable commercial standards for the processing of the check.
Conn. Gen. Stat. 42a-4-103 (e) sets forth the measure of damages to be employed for failure to exercise ordinary care. "The measure of damages for failure to exercise ordinary care in handling an item is the amount of the item reduced by an amount that could not have been realized by the exercise of ordinary care." Under this provision, the plaintiff bears the burden of proving that he would have been able to obtain payment of the Fernplan check if the check had been properly sent for presentment by Merrill Lynch. Appliance Buyers Credit Corp. v. Prospect National Bank of Peoria, 708 F.2d 290, 294 (7th Cir. 1983). The plaintiff must show that it had at least a "reasonable chance" to collect. Id. If the amount due was not collectible in any event, Merrill Lynch's failure to use ordinary care did not cause the plaintiff's loss and the plaintiff cannot recover. Marcoux v. Van Wyk, 572 F.2d 651, 653
(8th Cir. 1978) cert. den. 439 U.S. 801 (1978).
Steven Holahan, an expert in interbank check clearing who testified for CNB, his employer, stated that it can take from two to six weeks to process collection of a check drawn on a foreign bank. A Merrill Lynch employee testified that it is not unusual to take six weeks to process a foreign check drawn in U.S. dollars. The first difficulty in applying the Section4-103 measure of damages to this case is the great uncertainty as to how long it would have taken CNB to process the Fernplan check if it were properly entered for collection. The only consensus appears to be that it probably should have been processed within six weeks. Six weeks from the date of deposit, November 30, 1987, would be mid-January of 1988. However, by mid-January the stop payment order had already been entered. The plaintiff was informed in a letter dated January 5 that the stop payment order had already been entered, an order which the plaintiff later suspected was motivated by Fernplan's cash flow problems rather than by a sincere concern that the check was lost. If the company were having cash flow problems as of January 5 and the Fernplan check were presented at about that time, it would be only speculation to find that the check would have been honored. By mid-January Fernplan was clearly troubled financially. On January 14, the plaintiff spoke with Mr. Gamwells, who agreed to wire the amount owed to plaintiff's bank account in Hartford. The wire was never sent. CT Page 1012
The plaintiff presented no direct evidence whatsoever as to the financial condition of Fernplan in December, 1987 or January, 1988. The single financial fact presented is that the plaintiff's brother obtained payment of his Fernplan check, also drawn on Barclay's in the United Kingdom, on December 22, 1987. This single fact is not a sufficient basis from which the court can find that the plaintiff's check would have been honored if presented in late December or early January. The plaintiff has failed to sustain his burden of proof with respct [respect] to damages under Conn. Gen. Stat. 42a-4-103 (e).
The only other count against Merrill Lynch which should be specifically addressed is the Fifth Count, which alleges that Merrill Lynch's conduct was in contravention of the Connecticut Unfair Trade Practices Act, ("CUTPA"), Conn. Gen. Stat. 42-110a
et seq. Our Supreme Court has stated that we should consider three criteria in determining whether a practice violates CUTPA: (1) whether the practice, although not unlawful, offends public policy as established by statutes, the common law or other established concepts of Unfairness, (2) whether it is "immoral, unethical, oppressive or unscrupulous;" (3) whether it causes substantial injury to consumers. Sportsmen's Boating Corporation v. Hensley, 192 Conn. 747, 756 (1984). There has been no showing here that Merrill Lynch's failure to use ordinary care in sending the Fernplan check for payment offends any public policy, is immoral, unethical, oppressive or unscrupulous or that it causes substantial injury to consumers.
In his post-trial brief, the plaintiff asks the court to draw an adverse inference from the failure of Merrill Lynch to call as witnesses Kevin McKenna, the operations manager for the New Haven office of Merrill Lynch in 1987, and a second employee who filled out Merrill Lynch's returned check deposit form. The plaintiff also seems to seek the same inference for an employee of CNB who is very vaguely identified.
Under Secondino v. New Haven Gas Co., 147 Conn. 672 (1960), there are two requirements for the operation of the adverse inference rule. One of the requirements is that the witness midst be available to testify. There was no evidence presented to show that the two Merrill Lynch employees were actually available to testify during the trial in this case in New Haven. Nor was any such evidence presented with respect to the vaguely described CNB employee. An adverse inference would not be appropriate therefore. CT Page 1013
The Sixth through Eleventh Counts of the complaint are pled against CNB. The Sixth Count alleges that CNB breached its duty of good faith under Conn. Gen. Stat. 42a-1-203 by failing to present the Fernplan check to Barclays Bank of New York N.A. or one of Barclays' U.S. correspondent banks. Section 1-203
provides "Every contract or duty within this title imposes an obligation of good faith in its performance or enforcement." Conn. Gen. Stat. 42a-1-201 (19) defines good faith as "honesty in fact in the conduct or transaction concerned." There was no evidence whatsoever at trial of any lack of honesty on the part of CNB. Moreover, plaintiff failed to address this claim in his post-trial brief. The Sixth Count is therefore deemed abandoned.
The Seventh Count alleges that CNB lacked good faith and failed to exercise ordinary care under UCC Section 4-103. Again, there was no evidence whatsoever at trial of any lack of honesty on the part of CNB; and once again the issue was not briefed by plaintiff and it is deemed abandoned. Section 4-103
is referenced twice in the Seventh Count but this section does not establish a statutory duty of ordinary care. In this respect the Seventh Count fails to state a claim upon which relief may be granted.
The Ninth Count alleges that CNB failed to use ordinary care as required in UCC Code Section 4-202 (1)(b) in returning the Fernplan check to Merrill Lynch. Conn. Gen. Stat.42a-4-202 (a)(2) (the Connecticut equivalent of UCC Section 4-202 (1)(b)) provides
 A collecting bank must exercise ordinary care in . . . sending notice of dishonor or nonpayment or in returning an item other than a documentary draft to the bank's transferor after learning that the item' has not been paid or accepted as the case may be. . . .
(Emphasis added.) This section by its terms does not apply to the current facts because CNB was not returning an item after learning that it had not been paid or accepted.
The Tenth Count alleges that CNB violated federal regulations found at 12 C.F.R. § 229.31. This claim was not CT Page 1014 briefed by plaintiff in his post-trial brief and is deemed abandoned.
The Eleventh Count sets forth a claim against CNB in common law negligence. Conn. Gen. Stat. 42a-1-103 provides, "Unless displaced by the particular provisions of this title, the principles of law and equity . . . Shall supplement its provisions." Conn. Gen. Stat. 42a-4-202 sets forth the obligation of a collecting bank to exercise ordinary care. The provisions of Section 4-202 displace any common law cause of action for negligence. Childs v. Federal Reserve Bank, 719 F.2d 812, 815
(5th Cir. 1983). See also White v. Hancock Bank, 477 So.2d 265,271 (Miss. 1985) which holds that once a check was endorsed and delivered, the rights and responsibilities of the parties were determined by reference to the UCC and not by general negligence law.
 The objective of the Uniform Commercial Code is to displace scattered legislation or decisional law, and to state as rally as practicable a comprehensive and workable set of rules and principles for the governing of all aspects of transactions in the field to which it applies.
Pacific Products, Inc. v. Great Western Plywood, Ltd.,528 S.W.2d 286, 291 (Tex.Civ.App. 1975). The Eleventh Count fails to state a cause of action upon which relief can be granted. Moreover, even if the court were to entertain a common law negligence cause of action, plaintiff failed to sustain his burden of proof with respect to the claim.
The remaining count against CNB is the Eighth Count, which alleges that CNB violated Conn. Gen. Stat. 42a-4-204 (a). That section reads
 A collecting bank shall send items by a reasonably prompt method, taking into consideration relevant instructions, the nature of the item, the number of those items on hand, the cost of collection involved, and the method generally used by it or others to present those items.
(Emphasis added.) The plaintiff alleges that CNB violated this CT Page 1015 provision: (a) by failing to present the check to Barclays Bank of New York or one of Barclays' U.S. correspondent banks; (b) by failing "to implement the methods generally used to present a foreign check for payment," and (c) by not using a reasonably prompt method to notify Merrill Lynch of nonpayment and to return the check. Clearly sub-sections (a) and (b) of plaintiff's paragraph 25 in the Eighth Count are outside the scope of Section 4-204 (a), which addresses only the manner of sending items during the collection process. With respect to sub-paragraph (c), the evidence was that the Fernplan check was mailed back to Merrill Lynch in New Haven from CNB's processing center in Hartford by regular first class mail. Richard Sanders, who was in 1987 the manager of CNB's Return Items Department, testified in extensive detail about the handling of the check. Although CNB did not keep a record of the actual date of mailing checks returned unpaid, CNB did keep a log which was a record of any deviations from CNB's normal practices. The Fernplan check was not shown in the log for December, 1987, giving rise to a very strong inference that the Fernplan check was mailed to Merrill Lynch on December 3, 1987 by regular first class mail from Hartford to New Haven, the method generally used by CNB and others. The plaintiff failed to sustain his burden of proving that the method employed by CNB was not a "reasonably prompt method."
Judgment is entered for the defendants on all counts.
CHRISTINE S. VERTEFEUILLE, JUDGE