## Case No. 4,810.

### FIRST NAT. BANK OF TRINIDAD v. FIRST NAT. BANK OF DENVER.

[4 Dill. 290;[1] 7 Amer. Law Rec. 168; 6 Reporter, 356; 10 Chi. Leg. News, 388; 2 Tex. Law J. 74; 7 Cent. Law J. 170; 26 Pittsb. Leg. J. 24.]

Circuit Court, D. Colorado. July, 1878.

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

Wells, Smith & Macon, for plaintiff.
Sayre, Butler & Wright, for defendant.

DILLON, Circuit Judge. The plaintiff treats the defendant as its agent to collect the draft in question, and the ground of the action is the alleged negligent omission of duty on the part of the defendant. resulting in loss to the plaintiff. I have fully examined the adjudged cases relating to the duty and responsibility of a bank which undertakes to act as a collecting agent for its customers, or for other banks. They clearly show that the defendant bank ought to have ascertained, within a reasonable time, whether the draft transmitted had been received by its correspondent; and if not, to have advised the plaintiff thereof. The practice of banks to send such checks or drafts directly to the drawee (as in this case). is attended with some obvious additional peril, and does not weaken, if, indeed, it does not increase. the diligence required of the collecting bank in respect to inquiry and notice. The de-

fendant bank allowed an unreasonable time to elapse before it made inquiry concerning the draft, and more than a reasonable time ·had elapsed before the failure of the Kansas City bank occurred. It was this negligence that caused the loss, since it is established ·by the evidence that the draft would have been paid if it had been presented at any time before the suspension of the drawee, on the 29th day of January. Here, then, was an unexcused delay for fifteen or sixteen days to make any inquiry, or to give any notice. Aside from the custom or usage pleaded in defence, to be noticed presently, the decisions in England and in this country are uniform, that such delay to make inquiry, and omission to notify the party interested, as occurred in this case, impose a liability, if loss is thereby occasioned.

The alleged custom or usage, in derogation of the otherwise legal rights of the plaintiff, is one which scarcely seems consistent with reasonable vigilance, or the well known practice of business men and banks, to acknowledge promptly the receipt of money remittances. The evidence in this case showed that it was the uniform practice to make such acknowledgments. The defendant claimed that all the banks in Denver and Colorado relied on the monthly statements, and that it was not customary or usual to inquire after remittances in the interim between monthly statements. The evidence failed to show any such custom or usage common to all, or even to the majority, of the banks in Denver. In fact, it failed to show that there was any such uniform usage in the defendant bank, whose business seems to be well regulated. The cashier of the defendant frankly testifies that, if his attention had been called to the fact that no letter of advice had been received, in due course, from the drawee, he would have made inquiries. At all events, the usage of the defendant was, at most, its private usage or mode of doing business. It was not known to the plaintiff, and if it was invariably adhered to by the defendant, it was of such a nature that the plaintiff was not bound to take notice of it. It was shown in evidence that the defendant bank did a very extensive business; and it was claimed by the cashier, on the witness stand, that it was impracticable to look after all the paper sent forward to correspondents for credit in the interval between the transmission of such paper and the receipt of the monthly statement. But the evidence did not sustain this claim. On the contrary, it showed that banks in general were in the habit of so keeping their books as to have their attention called to a failure to receive advices, in order that they might institute the needful inquiries, and that it was the usual practice to make such inquiries unless upon the eve of the time when the monthly statement was due. The fact that the defendant transacts a large business cannot relieve it from the duty of giving due attention to every piece of paper it undertakes to collect. The measure of diligence cannot fluctuate with the amount of business which a given bank may do. And the defendant would not, perhaps, like to be discharged from liability on the ground, judicially declared, that it was not bound to the same degree of care as smaller banks, in transacting the business of its correspondents. I consider the liability of the defendant beyond any reasonable doubt.

Under the circumstances, I regard the rule of damages as equally clear. The plaintiff had more than the amount actually on deposit, subject to draft, in the Kansas City bank. The draft would have been paid if it had been presented in time; if plaintiff had been notified within a reasonable time that the draft had miscarried, it could have protected itself against loss. The Kansas City bank has failed. There was no evidence what dividend, if any, its creditors will receive. The draft in question was drawn in favor of the defendant, and it had, and has, the legal title thereto. The plaintiff, when it drew the draft, credited it to the drawee and charged it to the defendant, and received in turn credit from the defendant therefor. The defendant having the legal title to the draft, will be entitled to prove it as a lost instrument against the Kansas City bank, and to receive all dividends which may be declared. Under these circumstances, the defendant is liable for the full amount of the draft, and will be entitled to hold the draft as its own, or to have a duplicate if it desires. There is no other practicable rule of damages in the posture in which the case stands, and this rule cannot fail to measure the exact loss which may eventually ensue.

Judgment for plaintiff.