SALEM NATIONAL BANK, Plaintiff-Appellee, *v.* RAY CHAPMAN, d/b/a Triple R. Motor Company, Defendant-Appellant.

Fifth District   No. 77-516

Opinion filed September 13, 1978.

James M. Wexstten, of Walker, Gende, Hatcher, Doyle & Giamanco, of Mt. Vernon, for appellant.

Miller, Pfaff & Garner, of Salem, for appellee.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal from the judgment of the circuit court of Marion County, which held defendant, Ray Chapman, liable in the amount of $6,844.88 to the plaintiff, Salem National Bank of Salem, Illinois.

Ray Chapman, doing business as Triple R. Motor Company, maintained a checking account with Salem National Bank. As a matter of course, he would deposit checks received by him as payment for vehicles in the Salem account for collection, and write checks upon the account.

In mid-August 1976, defendant deposited a $4,240 bank draft payable through the Indiana National Bank in Indianapolis, Indiana. The item was sent for collection, was marked "void," and was dishonored.

The defendant overdrew his checking account in the amount of $6,844.88, which amount included the $4,240 due on the dishonored draft. The bank, in November 1976, brought suit to collect on the overdraft. The defendant answered, and alleged in his second amended answer the affirmative defense of failure by the bank to notify him of the dishonor in a timely manner, and sought discharge as an indorser on the $4,240 item. Defendant Chapman maintained that he was not notified of the dishonor until approximately one month after the bank received its notification. The bank, however, maintained that it notified the defendant "immediately" after it received notification.

The matter was heard by the trial court sitting without a jury, and as indicated, the court found in the bank's favor in the sum of $6,844.88 and judgment was entered in that amount against the defendant.

There are two issues presented. First, was Salem National Bank required to notify defendant of the dishonor by the Uniform Commercial Code as adopted in Illinois? And, if so, then second, did Salem National notify the defendant in a timely manner as required by statute?

The laws regulating commercial paper and bank deposits and collections in Illinois are codified in Illinois' adoption of the Uniform Commercial Code (UCC), as Ill. Rev. Stat. 1975, ch. 26, arts. 3 and 4.

Notice of dishonor was required from Salem National to defendant under the UCC (Ill. Rev. Stat. 1975, ch. 26, pars. 4—212(1) and (4)), which provides as follows:

> "(1) If a collecting bank has made provisional settlement with its customer for an item and itself fails by reason of dishonor,

suspension of payments by a bank or otherwise to receive a settlement for the item which is or becomes final, the bank may revoke the settlement given by it, charge back the amount of any credit given for the item to its customer's account or obtain refund from its customer whether or not it is able to return the items if by its midnight deadline or within a longer reasonable time after it learns the facts it returns the item or sends notification of the facts. These rights to revoke, charge-back, and obtain refund terminate if and when a settlement for the item received by the bank is or becomes final (subsection (3) of Section 4—211 and subsections (2) and (3) of Section 4—213).

\* \* \*

(4) The right to charge-back is not affected by
 (a) prior use of the credit given for the item; or
 (b) failure by any bank to exercise ordinary care with respect to the item but any bank so failing remains liable."

Plaintiff Salem Bank contends that since subsection (1) does not specifically require notice of dishonor to defendant, the bank is not required to give such notice. However, the statute does state that the bank may revoke a provisional settlement, charge-back the amount of any credit given or obtain a refund from its customer if "it returns the item or sends notification of the facts." Since the "fact" which entitles the bank to revoke the provisional settlement, and charge-back or obtain refund from the customer, is the fact of dishonor, it seems clear that the collecting bank, *i.e.*, the Salem National Bank, is required to give notice by its midnight deadline or within a reasonable time after it learns the fact of dishonor, to the customer.

■■ This position is reinforced by section 4—202(1)(b) of the UCC (Ill. Rev. Stat. 1975, ch. 26, par. 4—202(1)(b)) which provides as follows:

"(1) A collecting bank must use ordinary care in
 \* \* \*

 (b) Sending notice of dishonor or nonpayment or returning an item other than a documentary draft to the bank's transferor \* \* \*."

It seems logical that the drafters of the Code, and our legislature in adopting it, would not prescribe a standard of care for a requirement, and specifically mention that requirement in the section stating the standard of care, if it was not meant to apply.

In *First Security Bank v. Lundahl, Inc.* (1969), 22 Utah 2d 433, 454 P.2d 886, 888, the Supreme Court of Utah stated the same conclusion for different reasons when it said:

"The plaintiff's (bank's) contention is that it had accepted the check in question as an agent for collection only, and that it took upon itself no liability as the owner of the check. It is true that

under the Uniform Commercial Code there is a presumption that a collecting bank acts as agent for its depositor. Sec. 70A—4—201(1), U. C. A. 1953. However, this presupposes that the bank acts in accordance with its duty imposed by law; and this requires presentation to the payor bank in the due course of business, and, if the check is dishonored, notice to its depositor 'by its midnight deadline or within a longer reasonable time' under the circumstances. Sec. 70A—4—212(1), U. C. A. 1953. If there is a substantial failure of the bank to perform its duty, it loses its right to chargeback. Sec. 70A—4—212, U. C. A. 1953.

* * *

This failure of the plaintiff bank to discharge its duty prescribed by the statutes discussed above makes it responsible for the resulting loss."

■■ Having resolved that the bank did have the obligation to notify its customer of the dishonor, the issue becomes whether the bank in fact did notify the defendant. The trial court held that the bank did notify defendant Chapman orally on the basis of the testimony of a bank officer that he called defendant "immediately" after the bank was notified, and orally notified defendant of the dishonor. Section 3—508(3) of the UCC (Ill. Rev. Stat. 1975, ch. 26, par. 3—508(3)) provides oral notice is satisfactory. That section states:

"(3) Notice may be given in any reasonable manner. It may be oral or written and in any terms which identify the instrument and state that it has been dishonored."

■■ It was the court's conclusion that the matter of when notice was given really became a question of credibility and he found the evidence of the bank more credible than that of the defendant. Viewing the evidence as a whole, we cannot say that the trial court erred in its finding of fact that notice of dishonor was given "immediately" after the bank was notified. It is not the function of this court to substitute its judgment for that of the trial court. The trial court was in the best position to observe the witnesses and to give consideration to the evidence presented; unless the trial court's determination is contrary to the manifest weight of the evidence, it should not be disturbed. *In re Gates* (5th Dist. 1978), 57 Ill. App. 3d 844, 373 N.E.2d 568.

We therefore affirm the judgment of the circuit court of Marion County.

Affirmed.

G. J. MORAN and KARNS, JJ., concur.