**UNITED KENTUCKY BANK, INC., Appellant,**

v.

**EAGLE MACHINE COMPANY, INC. d/b/a Crittenden Drive Salvage, Appellee.**

Court of Appeals of Kentucky.

Jan. 28, 1983.

William D. Lambert, Ogden, Robertson & Marshall, Louisville, for appellant.

Ben B. Hardy, Hardy & Hardy, Louisville, for appellee.

Before HAYES, C.J., and HOWARD and LESTER, JJ.

LESTER, Judge.

This is an appeal from a summary judgment dismissing with prejudice the counterclaim of appellant against appellee in an action to recover money.

On March 14, 1980, Crittenden Drive Salvage entered into an agreement with Tan-Dem Machinery Sales, Inc. of Salt Lake City, Utah, whereby the former sold to the latter certain machinery, tools and equipment for the consideration of $85,000.00, $30,000.00 of which was paid upon consummation of the contract. The balance of the purchase price was secured by a first lien note payable before July 1, 1980. Appellee deposited the downpayment check in its account with appellant on March 17, 1980, for collection. The draft was processed through United's correspondent, Continental Illinois Bank & Trust Company of Chicago, but was dishonored by Tan-Dem's bank, First Security Trust of Utah, because it was drawn upon uncollected funds. On March 20, 1980, the Utah bank notified Continental by wire of the rejection but this information was not transmitted to United until April 2, 1980, with the check being physically returned to appellant six days later.

On April 9, 1980, United, noting that Eagle had insufficient funds in its account to cover the amount of the paper and further believing the return thereof was a "late return," mailed the check back to Chicago because it considered First Security to be liable within the provisions of KRS 355.-4–212. Almost a month later, May 7, 1980, Continental returned the draft to United because appellant had failed to furnish it with a statement of loss. For the first time, on May 20, 1980, (some 61 days after Continental had notice of dishonor and 48 days after United obtained the same information) appellant advised appellee of the situation.

During this period set forth above, and more specifically between April 4 and 30, 1980, Eagle, believing that the $30,000.00 check had been collected, loaded, dispatched and delivered three truck loads of machinery to Tan-Dem in Utah.

The initial step in this cause was a complaint filed by United against Tan-Dem for recovery of the $30,000.00. Appellee intervened seeking judgment against not only Tan-Dem but also United. Defaults were entered against the Utah firm in the sum of $30,000.00 for appellant and $85,000.00 for appellee. However, in the interim United counterclaimed against Eagle for the amount of the check to which appellee replied, based upon several provisions of the Uniform Commercial Code, that appellant knowingly and intentionally violated its responsibility and fiduciary duties in failing to use the required degree of care in the handling of the transaction. The circuit court agreed with Eagle and dismissed the counterclaim, hence this appeal.

Appellant's entire argument for reversal is based upon portions of one of its own regulations to the effect that items and their proceeds may be handled by the bank or any correspondent in the process in accordance with any common bank usage and

The Bank may, in its discretion, resubmit returned checks and any other items to the drawee or payor for settlement, ...

The bank finds authority for its adoption of rules in KRS 355.4–103 and further urges that since appellee agreed to abide by such rules that it cannot complain that United resubmitted the draft for collection. What is urged may be true, but what appellant overlooks is the contention that in spite of its privilege of resubmission of the check it was, nevertheless, negligent in failing to notify its depositor of the dishonor as soon as it gained that knowledge. It must be recalled that United was aware of the rejection (April 2nd) two days prior to Eagle's first shipment of machinery from Louisville on April 4, 1980. Appellee contends that if it had known of the dishonor of the check it would never have released its merchandise. This is not only prudent business procedure

but it also makes good common sense. Eagle made a substantial change of position based upon a misconception occasioned by United's negligence in failing to promptly give notification of the situation.

This jurisdiction has adopted the Uniform Commercial Code which provides in part at KRS 355.4–202:

(1) A collecting bank must use ordinary care in

\*      \*      \*      \*      \*      \*

(b) sending notice of dishonor or nonpayment or returning an item other than a documentary draft to the bank's transferer ...

The comments following the statute indicate that the applicable rule to a case involving the duty of notification of dishonor is found in 9 C.J.S., *Banks and Banking,* § 235 at 488 to the effect that:

The collecting bank must act in good faith, exercise reasonable skill in performing its duties, and *use due care* and diligence in making prompt presentment, demand and protest, *in giving notice of dishonor,* and in taking whatever steps are necessary to protect its customers' rights, or it will be liable for loss (emphasis added).

The foregoing finds support in the same authority in § 236 at page 493 wherein it is said:

At common law and under statutes declaratory thereof, a collecting bank must, on nonpayment, give prompt notice of dishonor to its principal.

In treating the similar provision to KRS 355.4–202, the Illinois Appellate Court, Fifth District, in holding a bank liable for a loss when it failed to give notice of dishonor for one month, expressed the view that failure to give notice within a reasonable time after learning of rejection establishes liability because

It seems logical that the drafters of the Code, and our Legislature in adopting it, would not prescribe a standard of care for a requirement, and specifically mention that requirement in the section stating the standard of care, if it was not

meant to apply. *Salem National Bank v. Chapman,* 64 Ill.App.3d 625, 21 Ill.Dec. 414, 381 N.E.2d 741, 25 U.C.C.Rep. 234 (1978).

The Illinois view as to imposition of liability for failure to give timely notice of dishonor is nothing new to this jurisdiction for it has been the law since as early as 1901, *Second National Bank of Louisville v. Merchants' National Bank of New Albany, Indiana,* 111 Ky. 930, 65 S.W. 4 (1901). *See* also *First National Bank of Trinidad v. First National Bank of Denver,* 4 Dill. 290, Fed.Cas. 4, 810 (1878).

The judgment is affirmed.

All concur.