Elmer C. YODER and Irene Yoder, Appellants (Defendants Below),

v.

CROMWELL STATE BANK, Appellee (Plaintiff Below).

No. 3-584A132.

Court of Appeals of Indiana, Third District.

May 23, 1985.

Rehearing Denied Aug. 2, 1985.

Jerome B. Van Orman, Fort Wayne, for appellants.

Stephen R. Snyder, Thomas J. Goeglein, Beckman, Lawson, Sandler, Snyder & Federoff, Syracuse, for appellee.

STATON, Presiding Judge.

Elmer and Irene Yoder appeal from summary judgment granted in favor of Cromwell State Bank (CSB) for $109,453.08 plus interest and attorney's fees in CSB's suit to recover on three checks. Yoder presented the three checks to CSB for deposit in the Yoder's joint account and the account was provisionally credited for a total of $123,-766.00. The maker of the checks, Blue Mound Dairy, stopped payment and the payor bank, State Bank of Worthington, Worthington, Minnesota, returned the checks to CSB without making payment. CSB subsequently set off against the Yoder's account the sum of $14,312.92 and brought this action to recover the balance.

The Yoders claim summary judgment was improper and present twelve issues for review which we have consolidated and restated as follows:

Did the trial court err in finding that there were no genuine issues of material fact and that

I. CSB had given the Yoders effective notice of the dishonor of the checks (Yoders' issues 1 & 2);

II. CSB had a right of charge back against the Yoders for the amount of the provisional credit (Yoders' issues 3, 4, 5, 6, & 9);

III. CSB properly set-off a portion of its claim against the balance in the Yoders' account (Yoders' issue 10);

IV. The Yoders were jointly and severally liable for the amount of the provisional credit extended: (Yoders' issues 7, 8, & 11).

We affirm.

 The Yoders argue strenuously that the existence of numerous issues of fact make the disposition of this case by summary judgment improper. They also argue that the trial court incorrectly applied the law to the facts. When this Court reviews a grant of summary judgment against such claims we must look at the pleadings, affidavits, depositions and testimony submitted in the proceedings below. Any doubt as to a fact or an inference to be drawn therefrom, is resolved in favor of the party opposing the motion for summary judgment. *Poxon v. General Motors Acceptance Corp.* (1980), Ind.App., 407 N.E.2d 1181, 1184. The movant has the burden of establishing that no genuine issue of material fact exists. *Hurst v. Bd. of Com'rs of Pulaski Co.* (1983), Ind.App., 446 N.E.2d 347, 349; however, the adverse party may not rest upon the mere allegations or denials of his pleading, but by affidavit or otherwise must set forth specific facts showing that there is a genuine issue for trial. Ind. Rules of Procedure, Trial Rule 56(E). In order to preclude summary judgment, a conflicting fact or inference must be decisive to the action or a relevant secondary issue. *Jones v. City of Logansport* (1982), Ind.App., 436 N.E.2d 1138, 1143.

I.

Notice

The parties do not dispute that on June 18, 1982 Elmer Yoder endorsed and delivered to CSB for deposit two checks totalling $88,320.00 drawn on the account of Blue Mound Dairy Farm, Inc. On June 21 Yoder deposited with CSB another check from Blue Mound Dairy for the sum of $35,446.00. Elmer and Irene Yoder's joint account was credited with a total of $123,-766.00. The affidavit of Kent Cunningham, Executive Vice President of CSB, states that prior to acceptance of the checks by the payor bank, State Bank of Worthington, payment was stopped on the checks. Within twenty-four (24) hours after receipt of notice of the stop-payment order, Cunningham notified the Yoders of the dishonor and of the fact that CSB was revoking the provisional credit and charging back those sums against the Yoders'

account. The affidavit of Deloris L. Lohr, an officer of State Bank of Worthington, states that "State Bank of Worthington determined that a stop-payment order was effective" against each of the checks and that the checks were dishonored and returned within twenty-four (24) hours of receipt.

The Yoders' first contention is that the notice of dishonor by Cunningham was not sufficient. We point out that nothing in the pleadings or affidavits of the Yoders refutes the fact that they were, indeed, notified. They argue, instead, that the notice should have been written rather than oral.

This case is governed by the Uniform Commercial Code, specifically Chapter 4 which deals with bank deposits and collections. Ind.Code 26-1-4-101 et seq. (Burns Code Ed., 1974).

A bank has the right to charge-back a customer's account or demand a refund under IC 26-1-4-212(1) which provides:

"If a collecting bank has made provisional settlement with its customer for an item and itself fails by reason of dishonor, suspension of payments by a bank or otherwise to receive a settlement for the item which is or becomes final, the bank may revoke the settlement given by it, charge-back the amount of any credit given for the item to its customer's account or obtain refund from its customer whether or not it is able to return the item *if by its midnight deadline or within a longer reasonable time after it learns the facts it returns the item or sends notification of the facts.* These rights to revoke, charge-back and obtain refund terminate if and when a settlement for the item received by the bank is or becomes final (subsection (3) of section [26-1-]4-211 and subsections (2) and (3) of section [26-1-]4-213)."

(emphasis added). Chapter 4 further provides that "[t]o the extent that items within this article are also within the scope of article 3 ... they are subject to the provisions of [article 3]. In the event of conflict the provisions of [article 4] govern those of article 3...." IC 26-1-4-102. Article 3, dealing with commercial paper, permits notice of dishonor to "... be given in any reasonable manner. It may be oral or written and in any terms which identify the instrument and state that it has been dishonored." IC 26-1-3-508(3). Applying 3-508 to article 4 pursuant to 4-102 would indicate that oral notice of the dishonor of the three checks deposited by Yoder is sufficient. The Yoders argue, however, that there is a conflict between the provisions because 4-212 grants the bank a right of charge-back if it "... *sends* notification of the facts." IC 26-1-4-212(1). Looking to the general definitional section of the code, we find "send" defined as follows:

" 'Send' in connection with any writing or notice means to deposit in the mail or deliver for transmission by any other usual means of communication with postage or cost of transmission provided for and properly addressed and in the case of an instrument to an address specified thereon or otherwise agreed, or if there be none to any address reasonable under the circumstances. The receipt of any writing or notice within the time at which it would have arrived if properly sent has the effect of a proper sending."

IC 26-1-1-201(38). The Yoders maintain this language indicates a writing and when inserted in 4-212 requires that the bank must send a written notification of dishonor. Two cases cited by the Yoders do interpret this purported conflict and decide that notice under 4-212 must be written. *Valley Bank & Trust Co. v. First Security Bank* (1975), Utah, 538 P.2d 298; *Available Iron & Metal Co. v. First Nat'l Bank* (1977), 56 Ill.App.3d 516, 13 Ill.Dec. 940, 371 N.E.2d 1032. There is an apparent split in the Illinois Appellate Court, however, for we find that the later case of *Salem National Bank v. Chapman* (1978), 64 Ill.App.3d 625, 21 Ill.Dec. 414, 381 N.E.2d 741, held that oral notice was sufficient under 4-212 based upon 3-508(3). The court did not discuss the purported conflict between the provisions. 21 Ill.Dec. at 417, 381 N.E.2d at 744. A New York

court specifically rejected the "conflict" argument in *Bank of Commerce v. DeSantis* (1982), N.Y.Civ.Ct., 114 Misc.2d 941, 451 N.Y.S.2d 974 and followed *Salem National Bank v. Chapman, supra,* holding that 3–508 permits oral notice. Likewise in *Laurel Bank & Trust Co. v. Sahadi* (1975), 32 Conn.Supp. 172, 345 A.2d 53 the court found effective notice of dishonor where there was unrebutted testimony from the bank manager that he telephoned the customer on the day following the date the bank learned of dishonor. 345 A.2d at 55.

■ Indiana courts have not dealt with the precise issue of what notice is required under 4–212. In *Hall v. Owen City State Bank* (1977), 175 Ind.App. 150, 370 N.E.2d 918, construing the notice requirement under 9–504(3), dealing with disposition of collateral upon default, this Court considered the requirement that notification of a public sale "... shall be sent by the secured party to the debtor." IC 26–1–9–504(3). Noting the definition of "send" at 1–201(38), the court rejected the argument that only written notice would suffice.

> "We feel that a rigid rule of law mandating a written notice in all cases conflicts with the general tenor of the UCC to reject strict procedural requirements and we would therefore read § 1–201(38) in conjunction with § 1–201(26) so as to impose upon the secured party the duty of taking reasonable steps to notify the debtor. The fact that the notice was oral instead of written should not invalidate that notice as a matter of law but should instead be one of the factors considered in deciding whether or not the notice was reasonable."

370 N.E.2d at 925. Hall is distinguishable because it deals with the secured transactions provisions of the U.C.C. rather than bank collections and deposits. The reasoning, however, is equally applicable to the case at bar in so far as it rejects a rigid requirement of written notice as being contrary to the general tenor of the U.C.C. We therefore reject the argument that 4–212 conflicts with 3–508 and follow the authorities which hold that a bank may

"send" notice either orally or in writing and fulfill its duty under 4–212.

## II.

### Right of Charge-Back

■ A substantial portion of the Yoders' brief is devoted to the contention that there were genuine issues of material fact regarding CSB's right to charge-back the amount of the dishonored checks in the first place. The Yoders insist that factual questions concerning the processing, posting and dishonor procedures followed by the payor bank in Minnesota give rise to the inference that CSB's right of charge-back had terminated. We recall the provision of 4–212(1) which states that a collecting bank's rights to revoke, charge-back and obtain refund terminate if and when settlement for the item received by the bank is or becomes final. The Yoders' argument based on this provision proceeds as follows: if the payor bank, SBW, had completed its process of posting (4–109) before receiving the stop-payment orders on the three checks, then the stop-payment orders were too late because final payment is deemed to have already occurred. (4–213). If final payment had occurred when CSB's right to charge-back terminated (4–212(1)) and the Yoders were no longer liable for the amount of the dishonored checks. This line of argument misses the point. The State Bank of Worthington is not a party to this action; whether it followed proper procedures in deciding to dishonor the checks should not be the focus of inquiry in determining the propriety of CSB's claim against the Yoders. The operative facts are that CSB received notice that the items were dishonored by the payor bank and in turn notified the Yoders. The U.C.C. provides that a collecting bank acts as an agent on behalf of its customer who presents items for collection. IC 26–1–4–201(1). As such, the collecting bank must use ordinary care in

> "(a) presenting an item or sending it for presentment; and
>
> (b) sending notice of dishonor or non-payment or returning an item other than

a documentary draft to the bank's transferor or directly to the depositary bank under subsection (2) of section [26–1–]4–212 after learning that the item has not been paid or accepted, as the case may be; and

\* \* \* \* \* \*

(2) A collecting bank taking proper action before its midnight deadline following receipt of an item, notice or payment acts seasonably; taking proper action within a reasonably longer time may be seasonable but the bank has the burden of so establishing.

(3) Subject to subsection (1)(a), a bank is not liable for the insolvency, neglect, misconduct, mistake or default of another bank or person or for loss or destruction of an item in transit or in the possession of others."

IC 26–1–4–202. Given the volume and speed of check processing it would be unrealistic to require the collecting bank to inquire and ascertain the grounds for and propriety of every item which is dishonored. The bank's duty of ordinary care extends to presenting or sending an item for collection and seasonably notifying the customer of any dishonor. The risk of non-payment remains with the customer and the collecting bank is held liable only for its own fault or non-compliance with the code. IC 26–1–4–201, Comment 1 (Burns Code Ed., 1974). The bank must be able to rely upon receipt of the items or notice of dishonor in order to act seasonably in notifying the customer and exercising its right of charge-back. We hold that the collecting bank, as agent for the customer, has no duty to inquire into the circumstances surrounding the dishonor before exercising its rights under the code.

A similar result was reached in *Mercantile Bank & Trust Co. v. Hunter* (1972), 31 Colo.App. 200, 501 P.2d 486 where the court said "the rule that a payor bank is 'accountable' for an item [4–302] does not mean that there has been a final settlement which would preclude a depositary bank from charging the amount of the item back to its depositor. 4–213 does not provide

that mere accountability of a payor for its check is a final settlement unless the check is actually paid by the payor." 501 P.2d at 488.

### III.

#### Set-off

■ After CSB notified the Yoders that the checks had been dishonored and that it was revoking the provisional credit given for the checks, it waited until October 9, 1982 to actually set-off against the Yoders' account $14,312.92 in partial repayment of the total sum. At that time CSB notified the Yoders in writing that it was applying the balance of the account against one of the Blue Mound Dairy checks which it erroneously stated had been returned for insufficient funds. The Yoders argue that this action was not the prompt exercise of the bank's right of charge-back required by the code, citing West's Annotated Code, Section 26–1–4–212, Comment 3. Interestingly, the Comments cited by West are apparently from the official version of the U.C.C. The Indiana Comments included in the Burns Code Edition do not contain the prompt charge-back language. IC 26–1–4–212 (Burns Code Ed. 1974). According to the Yoders mere notification of the charge-back without actually setting off any balance in the account does not amount to the prompt action contemplated by the Code. Moreover, the Yoders claim there are genuine issues of material fact regarding the balance in their account during the three and a half months before the bank set-off the fourteen thousand dollars. It is possible, they argue, that the bank could have exercised its right earlier and set-off the entire amount of the three checks. We must agree with CSB that the right to charge-back is not necessarily synonymous with the term set-off. The charge-back is the claim or lien against the customer's account, while the set-off is the actual reduction of the customer's account balance for part or all of the claim. In this case the bank charged back the amount of the dishonored checks and eventually satisfied part of the claim by setting off the amount

available in the Yoders' account. Since the bank notified the Yoders within twenty-four hours of the dishonor and charge-back, it acted within the requirements of 4–212; that it waited three and a half months to enforce the charge-back by setting off against the Yoders' account does not deprive CSB of the right to charge-back.

### IV.

### Joint and Several Liability

Finally, the Yoders insist that the trial court erred in holding Mrs. Yoder liable along with her husband for the unpaid amount of the provisional credit, plus prejudgment interest. Mrs. Yoder denies any direct participation in the transaction involving the three checks. The checks were payable to Elmer Yoder, endorsed and deposited by him and Mrs. Yoder claims she wrote no checks on the proceeds.

It is undisputed that the three checks were deposited into the joint checking account of Elmer and Irene Yoder, and that the account was credited with $123,766.00, the sum of the checks. IC 26–1–4–104(1)(e) (Burns Code Ed.1974) defines customer as "... any person having an account with a bank or for whom a bank has agreed to collect items...." Irene Yoder was clearly a customer of CSB. Under IC 26–1–4–212(1) a bank has a right to charge-back *its customer's* account or obtain refund from *its customer* based upon the bank's failure to receive settlement for an item for which it has made provisional settlement with *its customer*. (Emphasis supplied). Mrs. Yoder received a provisional credit in her joint account of more than one hundred twenty thousand dollars. As a joint account holder she had at all times, the right under Indiana law to withdraw any sums in the account. *See* IC 32–4–1.-5–8 and 32–4–1.5–9 (Burns Code Ed., 1974). The trial court correctly determined, therefore, that Irene Yoder had received consideration for checks, regardless of whether she actually participated in the transaction. It was her account in which the provisional credit had been made that was charged back when the checks were dishonored, and she remained liable for the amount of the charge-back when the set-off covered only a portion of the claim. Mrs. Yoder does not come within the ambit of the authorities she cites which relieve a non-participating co-signatory of liability for an overdraft where the co-signatory did not receive any of the funds. Mrs. Yoder received the provisional credit and was enriched by virtue of her ability to draw on those funds while they remained in her account. She was, therefore, liable upon dishonor of the checks and revocation of the provisional credit to refund to CSB the amount of the credit plus interest and expenses related to the item. IC 26–1–4–207(2) & (3).

Finding no genuine issue of material fact which would preclude summary judgment, the judgment of the trial court is affirmed.

HOFFMAN and GARRARD, JJ., concur.