Gerald W. KACAK, Appellant–
Defendant,

v.

BANK CALUMET, N.A.,
Appellee–Plaintiff.

No. 45A03–0612–CV–595.

Court of Appeals of Indiana.

July 17, 2007.

David Cerven, Smith & DeBonis, LLC, Highland, IN, Attorney for Appellant.

Rebecca Hoyt Fischer, Laderer & Fischer, P.C., South Bend, IN, Attorney for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant, Gerald W. Kacak, challenges the trial court's grant of summary judgment in favor of Appellee, Bank Calumet, N.A. ("the Bank"). Upon appeal, Kacak argues that there is a genuine issue of material fact as to whether the Bank is barred recovery based upon the doctrine of promissory estoppel.

We affirm.

■ The designated evidence reveals that on September 1, 2005, Kacak went to the drive-through window at the Bank's branch office located in Highland, Indiana to deposit into his account a cashier's check in the amount of $89,300.00 which was purportedly drawn on an account with Comerica Bank. Before depositing the cashier's check, Kacak asked the Bank's teller if the check was good because he wanted to take some cash back from the deposit. According to Kacak's affidavit, after the teller spoke with someone whom Kacak presumed to be her supervisor, the teller advised him "the check was good."

Appendix at 54. The Bank's records and a deposit slip for Kacak's account with the Bank show that during that transaction Kacak received $5,720.00 in cash and that the balance of $83,580.00 was deposited into his account. The cashier's check was subsequently dishonored as fraudulent. On or about September 13, 2005,[1] the Bank notified Kacak that the cashier's check was counterfeit and further informed him that his account had been debited $89,300.00.[2] By this time, however, Kacak had withdrawn the majority of the funds, resulting in an overdraft of his account of $82,469.89. Pursuant to Kacak's account agreement, the Bank demanded that Kacak reimburse the Bank for the amount of the overdraft. Kacak refused to do so.

On February 15, 2006, the Bank filed its complaint seeking a judgment against Kacak for the amount of the overdraft resulting from the dishonored cashier's check. On April 21, 2006, Kacak filed his answer and affirmative defenses, specifically listing the affirmative defense of estoppel. On May 2, 2006, the Bank filed its motion for summary judgment. Kacak moved to

[1]. A copy of the back of the cashier's check indicates that Comerica Bank processed the check on September 2, 2005. In an affidavit, Charles Kerr, Vice President for the Bank, states that the Bank did not receive notice that the cashier's check had been dishonored by Comerica Bank until September 13, 2005, when the original cashier's check was returned to the Bank.

[2]. The Bank was acting pursuant to Indiana Code § 26-1-4-214 (Burns Code Ed. Supp. 2006), which provides:

"(a) If a collecting bank has made provisional settlement with its customer for an item and fails by reason of dishonor, suspension of payments by a bank, or otherwise to receive settlement for the item which is or becomes final, the bank may revoke the settlement given by it, charge back the amount of any credit given for the item to its customer's account, or obtain a refund from its customer, whether or not it is able to return the item, if by its midnight deadline or within a longer reasonable time after it learns the facts it returns the item or sends notification of the facts. If the return or notice is delayed beyond the bank's midnight deadline or a longer reasonable time after it learns the facts, the bank may revoke the settlement, charge back the credit, or obtain a refund from its customer, but it is liable for any loss resulting from the delay. These rights to revoke, charge back, and obtain refund terminate if and when a settlement for the item received by the bank is or becomes final."

This statute sets forth the policy that it is the customer, not the bank, who ultimately bears the risk of nonpayment of items presented to the bank. *See In re Smith*, 966 F.2d 1527 (7th Cir.1992) (applying Indiana law); *Yoder v. Cromwell State Bank*, 478 N.E.2d 131 (Ind.Ct. App.1985), *trans. denied*.

strike the Bank's motion for summary judgment, and then he filed his motion in opposition thereto. On July 7, 2006, the trial court held a hearing on Kacak's motion to strike, which the court apparently denied as it set a briefing schedule for the Bank's motion for summary judgment. The parties then refiled their summary judgment materials. The trial court conducted a hearing on the Bank's summary judgment motion on October 13, 2006. At the conclusion of the hearing, the trial court, although noting there may be some issue of fact with regard to set-offs, orally granted the Bank's motion for summary judgment.[3] The trial court issued a written order to that effect on November 16, 2006. Kacak filed his notice of appeal on November 13, 2006, and again on November 21, 2006 after the trial court issued its written order.

Upon appeal, Kacak argues that the trial court erred in granting the Bank's motion for summary judgment because he claims that there remains a genuine issue of material fact as to whether the Bank is barred recovery under the doctrine of promissory estoppel. Our standard of review of trial court rulings on summary judgment is well settled:

"Summary judgment is appropriate only where no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. Genuine issues of material fact exist where facts concerning an issue which would dispose of the litigation are in dispute. The moving party has the initial burden of demonstrating, prima facie, the absence of genuine issues of material fact. If the moving party does so, the burden then falls upon the non-moving party to iden-

tify a factual dispute which would preclude summary judgment. Upon appeal of a grant of summary judgment, we apply the same standard as the trial court, resolving any factual disputes or conflicting inferences in favor of the non-moving party. We consider only those portions of the record specifically designated to the trial court. Upon appeal, the non-moving party bears the burden of persuasion and must specifically point to the disputed material facts and the designated evidence pertaining thereto. We will liberally construe the designated evidence in favor of the non-movant, so that he is not improperly denied his day in court. Nevertheless, we will not become an advocate for a party, and the trial court's entry of summary judgment will be affirmed if it may be sustained upon any theory or basis found in the evidentiary material designated to the trial court." *Meisenhelder v. Zipp Exp., Inc.*, 788 N.E.2d 924, 926–27 (Ind.Ct.App.2003) (citations omitted).

Here, the Bank met its prima facie burden of establishing that it was entitled to judgment as a matter of law under I.C. § 26–1–4–214 and pursuant to Kacak's account agreement. The burden then shifted to Kacak to show that a genuine issue of material fact exists, thereby defeating summary judgment. In response to the Bank's arguments in support of summary judgment, Kacak did not challenge the Bank's claims, but rather asserted the defense of promissory estoppel[4] based upon what he considers to be a promise by the Bank, through its teller, when he was informed that "the check is good." Kacak maintains that there are genuine issues of

---

3. The trial court indicated that the issue of set-offs and/or credits possibly due to Kacak would be considered during proceedings supplemental.

4. *See Wabash Grain, Inc. v. Bank One, Crawfordsville, NA,* 713 N.E.2d 323 (Ind.Ct.App. 1999) (considering the defensive use of promissory estoppel).

material fact as to his defense of promissory estoppel.

The doctrine of promissory estoppel is applicable where there is: (1) a promise by the promisor; (2) made with the expectation that the promisee will rely thereon; (3) which induces reasonable reliance by the promisee; (4) of a definite and substantial nature; and (5) injustice can be avoided only by enforcement of the promise. *Meisenhelder*, 788 N.E.2d at 932. In other words, "[a] promisor who induces a substantial change of position by the promisee in reliance upon the promise is estopped from denying the enforceability of the promise." *Id.*

The doctrine of promissory estoppel has been ruled applicable to commercial transactions. *Citizens State Bank v. Peoples Bank*, 475 N.E.2d 324, 327 (Ind.Ct.App. 1985). The use of promissory estoppel is consistent with the Uniform Commercial Code's obligation of good faith and is expressly provided for as a principle of law which supplements the provisions of I.C. 26–1. *Id.;* Ind.Code §§ 26–1–1–103 and –203 (Burns Code Ed. Supp.2006).

Kacak asserts when the Bank's teller informed him that the cashier's check was "good," the Bank was essentially promising him that the check was valid and that the Bank would honor it. Kacak further asserts that the Bank made the promise with the expectation that he would rely upon it because he asked about the validity of the cashier's check so he could take cash back from it immediately. Kacak maintains that he reasonably relied upon the Bank's promise that the cashier's check was "good" and thereafter made withdrawals of nearly all of the funds prior to being informed that the cashier's check had been dishonored and that his account had been debited the full amount. In his affidavit, Kacak states that he would not have made withdrawals against the funds credited to his account from the cashier's check had the Bank informed him that there was a possibility that the cashier's check was invalid. Kacak claims that on these facts, all of the elements of the doctrine of promissory estoppel have been met. At the very least, Kacak argues that reasonable inferences can be drawn from the facts which support the defensive use of promissory estoppel. Kacak therefore argues that there are genuine issues of fact which preclude summary judgment in favor of the Bank.

In response to Kacak's promissory estoppel argument, the Bank argues that Kacak has not suffered an unjust or unconscionable injury or loss to warrant application of the equitable doctrine. To the contrary, the Bank asserts that it would be an injustice to shift the liability for the fraudulent check from Kacak to the Bank.

Construing the evidence in the light most favorable to Kacak, the non-moving party, we conclude that Kacak's averment that the teller informed him the check was "good" is insufficient as a matter of law to constitute a promise for purposes of a promissory estoppel defense. " 'A promise is a voluntary commitment or undertaking by the party making it (the promisor) addressed to another party (the promisee) that the promisor will perform some action or refrain from some action in the future.' " *Medtech Corp. v. Indiana Ins. Co.*, 555 N.E.2d 844, 847 (Ind.Ct.App. 1990) (quoting *Woodall v. Citizens Banking Co.*, 507 N.E.2d 999, 1000 (Ind.Ct.App. 1987)).

The statement—"the check is good"— does not meet the definition of what constitutes a promise. Rather, the statement, even considered in the light most favorable to Kacak, is a representation of a present fact, not a promise as to the Bank's future actions with regard to the cashier's check

presented by Kacak. The statement by the teller that "the check is good" did not mean that the Bank was promising to honor the check under any and all circumstances or that the Bank was promising to forgo its statutory rights to debit Kacak's account if the cashier's check ultimately proved to be fraudulent or not backed by sufficient funds. Without a promise on which to rely, Kacak cannot rely upon the defense of promissory estoppel.[5]

Furthermore, Kacek endorsed the check in blank when he deposited it, thereby becoming obligated to pay the amount due on the instrument when it was dishonored. *See* Ind.Code § 26-1-3.1-415 (Burns Code Ed. Repl.1992).

This is not to say that individuals in a similar situation as presented here are absolutely without recourse against a bank. Although the statutes within the Uniform Commercial Code ("UCC") which relate to bank deposits and collections[6] appear to confer significant protections upon banks, even in situations where a bank's conduct may otherwise lead to liability, there remains a general obligation of good faith which is imposed upon the performance or enforcement of every contract or duty provided for throughout the UCC. *See* I.C. § 26-1-1-203. Here, however, there is no allegation that the Bank breached its duty of good faith.

 We further recognize that the UCC specifically provides that principles of law and equity supplement the provisions of the UCC. *See* I.C. § 26-1-1-103. In other words, where not specifically provided for by statute,[7] a bank may be accountable for making material misrepresentations under a theory of actual or constructive fraud or some other principle of law and equity which may be applicable to the particular situation. Here, Kacak argued only that the Bank was barred recovery under a theory of promissory estoppel. We have concluded, however, that the Bank teller's statement upon which Kacak relies is insufficient as a matter of law to constitute a promise for purposes of establishing his defense of promissory estoppel. We therefore hold that the trial court did not err in granting summary judgment in favor of the Bank.

The judgment of the trial court is affirmed.

ROBB, J., and VAIDIK, J., concur.

---

5. Under Indiana common law, as per a very early case, if the maker of a note states to a prospective purchaser of a note that the note "was all right, and just," such representation might well estop the maker as a defendant in an action on the note brought by the holder of the note. *See Jones v. Dorr,* 19 Ind. 384 (1862). Thus, if Kacak had obtained from the drawer bank, Comerica Bank, a representation that the cashier's check "is good," Comerica would be estopped. But here it appears that there was no such account as represented upon the face of the cashier's check. Comerica dishonored the check as counterfeit and returned it to the Bank.

6. *See* Ind.Code 26-1-4.

7. As an example, Indiana Code § 26-1-4-402 (Burns Code Ed. Supp.2006) provides that a payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item.